STATE OF CONNECTICUT *vs.* JOHN H. HOWARTH.

A testamentary trustee gave a bond with the defendant as surety for the faithful discharge of his trust. He had held the trusteeship for some time before, the bond being given in place of another, and it appeared that at some time previous to giving the new bond he had had the trust fund uninvested in his hands. Two years later he was removed and the fund was found to have been converted by him. Held that, as he had a right to hold the fund during his trusteeship, it was no answer to the claim upon the defendant on the bond, that the conversion might have been made before the bond was given, his completed default being his neglect to pay over the fund in money or proper securities to his successor.

If the trustee at any time retained any part of the money in his own hands he became a debtor to the fund for the amount, and this indebtedness was to be regarded as assets in his hands.

An account filed with the court of probate by the trustee before the bond was given in which he charged himself with certain funds, held to be evidence against the surety as much as it would have been against the trustee, the liability of the former being co-extensive with that of the latter.

The accounts of testamentary trustees appear upon the probate files and records, and are open to the inspection of the public, so that a surety has the means of informing himself with regard to the faithfulness of his principal. It is the duty therefore of the surety to inform himself, and he is not discharged by the same failure on the part of a cestui-que trust to give information or take measures for his protection that would discharge the surety on a bond for the faithfulness of a private servant.

Besides this, testamentary trusts are generally for the benefit of persons who are unable to exercise vigilance with regard to the management of the trust, and the statute requires the giving of the bond for their protection.

Where a trustee refuses to account for the profits arising from his use of the money or has so mingled it with his own that he can not separate and account for the profits that belong to the *cestui que trust*, the latter is allowed compound interest. This rule applies especially to cases involving a willful breach of duty.

COVENANT, upon a joint and several bond given by William N. Barnett as principal and the defendant as surety for the faithful performance by the principal of his duties as testamentary trustee under the will of Henry Ward; brought to the Superior Court in New Haven County. The declaration set forth the breach of the bond, which the defendant denied and pleaded full performance. The facts were found by a committee and the case reserved for the advice of this court. The case is fully stated in the opinion.

*L. B. Morris* and *J. W. Alling*, for the plaintiff, cited, to the point that where a trustee becomes indebted to a trust estate the indebtedness is regarded as assets in his hands—*Prindle* v. *Holcomb*, 45 Conn., 111; *Davenport* v. *Richards*, 16 id., 310; *Dawes* v. *Edes*, 13 Mass., 177; *Mattoon* v. *Cowing*, 13 Gray, 387; *Leland* v. *Felton*, 1 Allen, 531; *Chapin* v. *Waters*, 110 Mass., 195; *State* v. *Drury*, 36 Misso., 281. To the point that the obligation of the surety was precisely the same as that of the principal—*Wattles* v. *Hyde*, 9 Conn., 15; *Gilbert* v. *Isham*, 16 id., 528. That the surety was liable where there was a continuing duty of the principal—*Merrells* v. *Phelps*, 34 Conn., 109; *Choate* v. *Arrington*, 116 Mass., 552. That the trustee could not lend on mere personal security—1 Perry on Trusts, §§ 452, 453. That the *cestui que trust* was under no obligation of active diligence toward the defendant—*Bull* v. *Allen*, 19 Conn., 105; *Glazier* v. *Douglass*, 32 id., 400; *U. States Bank* v. *Magill*, 1 Paine, 667; *Adair* v. *Brimmer*, 74 N. York, 539. And that the trustee should be charged with compound interest—1 Perry on Trusts, §§ 468, 471; *Booth's Appeal from Probate*, 35 Conn., 165; *Prindle* v. *Holcomb*, 45 id., 111; *Adair* v. *Brimmer*, 74 N. York, 539.

*C. R. Ingersoll* and *W. C. Robinson*, for the defendant, cited, as to the defendant's not being liable for certain of the defaults as having occurred before the bond was given—*Farrar* v. *U. States*, 5 Pet., 373; *U. States* v. *Boyd*, 15 id., 187; *U. States* v. *Linn*, 1 How., 104; *Myers* v. *U. States*, 1 McLean, 493; *Postmaster-General* v. *Norvell*, Gilpin, 106; *County of Mahaska* v. *Ingalls*, 16 Iowa, 81; *Bessinger* v. *Dickerson*, 20 id., 261; *Vivian* v. *Otis*, 24 Wis., 518; *Townsend* v. *Everett*, 4 Ala. N. S., 607; *Patterson* v. *Freebold*, 38 N. Jer. Law R., 255; *Hetten* v. *Lane*, 43 Texas, 279; *Rochester* v. *Randall*, 105 Mass., 295; *Thomas* v. *Blake*, 126 id., 320. As to the defendant being discharged as to this part of the loss by indulgence and negligence on the part of the *cestui que trust*—*Phillips* v. *Foxall*, L. Reps., 7 Q. B., 666; *Leland* v. *Felton*, 1 Allen, 531; *Rochester* v. *Randall*, 105

Mass., 295. And as to the non-liability of the defendant by reason of the neglect of the *cestui que trust* to notify him, when the bond was given, of the previous conduct of the trustee—1 Story Eq. Jur., § 215; *Doughty* v. *Savage,* 28 Conn., 155; *Franklin Bank* v. *Cooper,* 36 Maine, 179; *S. C.,* 39 id., 551; *Sooy* v. *The State,* 39 N. Jer. Law R., 135; *McKecknie* v. *Ward,* 58 N. York, 541; *Telegraph Co.* v. *Barnes,* 64 id., 385; *Atlas Bank* v. *Brownell,* 9 R. Isl., 168; *Charlotte &c. R. R. Co.* v. *Gow,* 59 Geo., 685; *Smith* v. *Bank of Scotland,* 1 Dow, 272, 292; *Railton* v. *Mathews,* 10 Clark & Fin., 934, 943; *Hamilton* v. *Watson,* 12 id., 109; *Lee* v. *Jones,* 14 Com. Bench N. S., 386; *Phillips* v. *Foxall,* L. Reps. 7 Q. B., 666; *Owen* v. *Homan,* 3 Mac. & Gord., 378; *Stone* v. *Compton,* 5 Bing. N. C., 142.

PARDEE, J. Henry Ward, of Orange, died prior to May 15th, 1857, leaving a will, in which was the following paragraph:

" The balance of my estate, if any, over and above the foregoing legacies and specific devises and bequests, I direct my executors to invest safely at their discretion, and to hold the same with the interest thereon accruing until the interest shall be equal to the principal; and thereafter to pay and appropriate the interest and income of the whole fund thus accumulated for the support of the gospel ministry in said Episcopal society, provided the same shall be approved by the bishop of the diocese, or in his absence by the standing committee. I nominate, constitute and appoint Enos A. Prescott, of New Haven, and Isaac Hine and William N. Barnett, of Orange, executors of this my will, hereby revoking and annulling all former wills by me executed."

This will was duly proved before and approved by the probate court for the district of New Haven, having jurisdiction thereof.

Of the persons named as executors Isaac Hine and William N. Barnett qualified as such, and continued to act in that capacity until July 3d, 1862, when Hine tendered his resignation as executor and trustee under the will; which resig-

nation was accepted by the probate court on September 26th, 1862. From this date to December 15th, 1877, when he was removed, Barnett was sole executor and trustee. On July 15th, 1862, Barnett filed a new probate bond with Jeremiah Barnett as surety. In 1872 the executor of Jeremiah Barnett, then deceased, filed an application in the probate court to be released from his liability as surety upon the bond given on July 15th, 1862; the petition was granted, and on October 2d, 1872, Barnett filed a new bond with A. F. Wood as surety. On February 16th, 1876, Wood applied to the probate court to be relieved from his liability as surety; his petition was granted, Barnett having on March 6th, 1876, executed the bond in suit with John H. Howarth, the defendant, as surety; which bond is upon condition as follows:—"The condition of this obligation is such, that whereas Henry Ward, late of said Orange, deceased, in and by his last will and testament bearing date the 10th day of September, A. D. 1850, and duly proved before and approved by the court of probate for the district of New Haven in said county and state on the 15th day of May, A. D. 1857, created a certain trust for the benefit of Christ Church, West Haven; and whereas said William N. Barnett is one of the trustees appointed to manage and execute said trust; now therefore if said William N. Barnett shall faithfully perform his duty as such trustee according to law and said will then this bond to be void, otherwise good and valid."

A few days prior to the execution of this last-mentioned bond Barnett presented to the probate court an account, in which he charged himself with the following items as constituting the principal of the fund then in his hands:

"Note of G. R. & E. A. Hotchkiss, $727.71
    "    "    "    "    500.00
    "    "    "    "    1,250.00
New Haven Bond, - - 500.00—$482.50
Connecticut Savings Bank, - 1,000.00
New Haven Bank, - - 1,000.00
National Bank, - - 500.00

| Check, | - | - | - | 1,000.00 |
| Cash, &c., | - | - | · - | 103.74 |

$6,563.45"

Between the date of the presentation of this account and July 15th, 1876, he appropriated to his own use the bond, the bank deposits, and the cash therein mentioned. On December 15th, 1877, he was removed from his office and trust as executor. On January 5th, 1878, John C. Hollister, Esq., was duly appointed by the probate court to execute the trust created by the will; he qualified as such trustee to the acceptance of the court, and now acts as such. Shortly after his appointment he made demand upon Barnett for the amount of the Ward fund; but the latter has never delivered to him any money or other assets, and none have ever come to his hands as such trustee.

In his account Barnett stated that the sum of $727.21 was then invested in a note signed by G. R. Hotchkiss, endorsed by E. A. Hotchkiss. Concerning this note it is found that it was dated in February, 1871, and was payable February 4th, 1876; that on or about October 20th, 1875, it was paid by the substitution therefor of a new note of $753.78, made and endorsed by the same parties, payable at four months from date; that on November 1st, 1875, Barnett procured this last note to be discounted for his individual account and received the avails thereof; and that it was subsequently taken up by him and presented as a claim due to himself from the assigned estates of the maker and endorser.

He also stated in that account that a portion of the trust fund had been invested in a note for $1,250, dated November 4th, 1875, payable nine months from date, and a further portion in a note for $500, dated January 25th, 1876, payable four months from date, both signed by G. R. Hotchkiss and endorsed by E. A. Hotchkiss. These notes were made, endorsed, and placed in the possession of Barnett, only as collateral security for his accommodation endorsement upon the notes of G. R. Hotchkiss.

From this it results, therefore, that at a certain time he

had in his hands uninvested principal of the fund equal to the sum represented in the three notes, namely, $753.78, $500, and $1,250. As his account was rendered in his official capacity in obedience to the law and with the intent to charge himself with the sum therein expressed, and for the special purpose of informing all persons interested therein as to the amount of the fund, it is evidence upon that point against him, and against the defendant as well, since in this regard his liability is co-extensive with that of his principal. And as there is no finding that he subsequently discharged this duty of a trustee in reference to this money, either by investment of it and the delivery of the securities to his successor, or by payment to his successor of the amount in money, his default for the entire amount of the fund at the termination of his trusteeship is established; and for that the defendant is answerable.

When Barnett presented this statement to the probate court, the *cestui que trust,* the society of Christ Church of West Haven, was present by members of its vestry and by counsel, and objected to the reception thereof for the reason that the notes were not endorsed to the order of Barnett as trustee, and that it had no interest in them; also that both maker and endorser had gone into insolvency and they were worthless. Thereupon he endorsed them to himself as executor, and said that if he was allowed a little time he could make them good. The church still objecting to the allowance of the account, the probate court ordered it to be recorded. Subsequently Barnett instituted suits as executor against the endorser of these notes and made attachments in the actions. After his removal application was made to his successor to furnish bonds and funds for the prosecution of the suits, which he declined to do, assigning as reasons that the *cestui que trust* did not recognize that it had any interest in the notes or that they constituted any part of the trust fund, and that it had recently for the first time learned that the note for $727.21 had been exchanged for the note for $753.78, and that the notes for $500 and $1,250 were pledged to Barnett as collaterals; whereupon the suit was discon-

tinued. The defendant had no knowledge either of the pendency of these suits, or of the refusal of the new trustee to continue them. It is the claim of the defendant that if these notes were assets in March, 1876, they were so in January, 1878, and that no cause of action therefor arose against him; or if they were not assets upon the first date, and were merely a cover for a previous conversion, he is not responsible therefor, under the rule that he is only to answer for acts and omissions of his principal occurring during his suretyship; citing *Farrar* v. *United States*, 5 Peters, 373; *United States* v. *Boyd*, 15 Peters, 187; *Rochester* v. *Randall*, 105 Mass., 295; and other cases. Most of these are cases of suretyship for collectors of taxes. The duty of such collector in reference to money received is at a fixed time to pay it to the sovereignty or community entitled to it; by neglecting to perform that duty, and by appropriating the money to his own use, he is, in reference to it, at once and completely in default, for which whoever is then surety for him is answerable.

But it was the right and duty of Barnett to hold the principal of the fund until the termination of his trusteeship; if therefore he at any time retained any part of it in his own hands he became a debtor to the fund, with the continuing duty either of investing it or upon his removal of delivering it to his successor. His failure to do this is the completed default shown by the record and is within the time and terms of the defendant's undertaking.

It is furthermore the claim of the defendant that the *cestui que trust* has relieved him from all responsibility upon his bond by its failure to repeat to him the protest entered at the probate court against the acceptance of the trustee's account; by its delay in moving for his removal; by its omission to inform the defendant that the management of the fund was improper; by its omission to protect him, by commencing suits against the trustee, the maker and the endorser of the Hotchkiss notes; and by its omission to continue at its own cost the suits which had been instituted. And in support of this claim he cites numerous cases which may be represented by a selected few.

In *Smith* v. *Bank of Scotland*, 1 Dow, 272, 292, it is said that if "a principal, suspecting the fidelity of his agent, requires security in a way which holds him out as a trustworthy person, the cautioner is not liable." In *Railton* v. *Mathews*, 10 Cl. & Fi., 934, that "mere non-communication of circumstances affecting the situation of the parties, material for the surety to be acquainted with and within the knowledge of the person obtaining a surety bond, is undue concealment, though not willful or intentional, or with a view to any advantage to himself." In *Phillips* v. *Foxall*, Law Reps. 7 Q. B., 666, that "on a continuing guarantee for the honesty of a servant, if the master discovers that the servant has been guilty of dishonesty in the course of the service, and instead of dismissing the servant he chooses to continue him in his employ without the knowledge and consent of the surety, express or implied, he cannot afterwards have recourse to the surety to make good any loss which may arise from the dishonesty of the servant during subsequent service." In *Hamilton* v. *Watson*, 12 Cl. & Fi., 109, that "a surety is not of necessity entitled to receive, without enquiry, from the party to whom he is about to bind himself, a full disclosure of all the circumstances of the dealings between the principal and that party." In *Atlantic & Pacific Tel. Co.* v. *Barnes*, 64 N. York, 385, the head note is as follows:— "The sureties upon a bond given by an employé to his employer, conditioned that the former will faithfully account for all moneys and property of the latter coming to his hands, are not discharged from subsequent liability by an omission on the part of the employer to notify them of a default on the part of their principal known to the employer, and a continuance of the employment after such default, in the absence of evidence of fraud and dishonesty on the part of the employé. *It seems* that the rule is otherwise where the default is of a nature indicating a want of integrity in the employé, and this is known to the employer."

These are suretyships required by individuals or private corporations for protection against loss by reason of the unfaithfulness of clerks or servants; the nature and extent

of the duties which these have undertaken to perform and of the trust which has been confided to them, and the state of the accounts between them and their employers at any given time, can accurately be known by the surety only by the acts and words of the employer; if therefore the latter knowing the surety to be shut up to this single source of information misleads him to his injury, the law will not permit the employer to reap any advantage from concealment or misrepresentations.

In the testamentary trust before us the acts and accounts of the trustee being matters of record in the probate court, accessible to all persons interested in knowing what they were, the *cestui que trust* might well presume full knowledge on the part of the defendant in the absence of any application to it by him for information. In the cases cited the person for whose benefit the surety assumes a risk is absolute master of the servant, and can at the moment of discovering his unfaithfulness put an end to his service, and thus make the resulting loss as small as possible. But a testamentary trustee is neither the agent, nor under the power of the *cestui que trust;* the latter can only petition for his removal; it is for the probate court to act upon hearing after notice and consequent delay; during this delay the trustee may complete the conversion of the fund in spite of the most diligent effort to prevent it.

Again, ecclesiastical and charitable corporations, females, minors, infants, and insane persons, may be and often are beneficiaries under testamentary trusts; for the protection of these the statute commands the probate court to require of the trustee a probate bond, and makes his refusal to give it a refusal to accept or perform the duties of the trust. The procurement of a surety is the act of the trustee, performed in obedience to the law; it is not at the request of the *cestui que trust;* need not be with his knowledge; may be against his will and in spite of his protest. He is the ward of the state; the passive recipient of its protection; he can neither terminate the duties of the trustee nor diminish the risk of the surety by any act or declaration; these are determined by the law administered by the probate court.

The surety, always, of course, has both the ability and the opportunity to decide, for himself the extent of the risk assumed; and it is only by force of his self-imposed burden that the trustee is enabled to obtain possession of the fund. Upon him rests the duty of enquiry as to the character and acts of his principal; he is to be diligent in his own protection; he is to discover for himself the earliest indications of fault or fraud. It is not his privilege to abstain from all enquiry and cast upon the *cestui que trust* the loss resulting from his voluntary ignorance.

The *cestui que trust* is under no obligation to determine for him what acts or investments on the part of his principal may or may not put him in peril; is not bound to institute or continue legal proceedings for his protection; not bound either to obtain information for his benefit, or to provide against or foresee possible loss to him. The purpose of the statute is to compel the surety to insure the *cestui que trust*, not that the latter shall defend him.

Moreover, upon the facts the case before us furnishes no opportunity for the application of the principles established by the cited cases. Concerning the transactions of Barnett in the Hotchkiss notes, it is not found that the *cestui que trust* had any information other than that given in his annual reports to the probate court. The defendant knew that he had long acted as trustee; that he was himself undertaking a suretyship which another had borne and desired to lay down; knew that the *cestui que trust* was accessible to him, but refrained from asking for any information. The *cestui que trust* might well presume that he had by way of precaution exhausted all means of knowledge, and had learned all facts known to itself.

It is not found that the *cestui que trust* had either knowledge or suspicion as to the conversion of any part of the fund until after the conversion of the whole; its knowledge came too late for any effort to save any portion from the trustee; and soon after knowledge came its petition for his removal. The case does not find negligence in fact on its part in not sooner knowing or suspecting the misappropria-

tion; nor undue delay after knowledge in asking for his removal; nor fraud in concealing any fact from the defendant; nor that it withheld any knowledge upon enquiry of it by him; nor does the law impute either negligence or fraud to it.

It was the right of the trustee to keep possession of the principal, the right of the *cestui que trust* to receive the income only; that was paid to it up to, but not beyond, the time when the defendant became surety. The trustee might fail to receive and consequently fail to pay over income without fraud or fault on his part; the *cestui que trust* was not of legal necessity bound to suspect either simply from the fact of non-payment; when upon enquiry it was in effect assured by the trustee that the fund had earned interest as before, but that he had expended it in the protection of the principal.

In reference to interest the rule is, that if the trustee refuses to account for the profits arising from his use of the money, or if he has so mingled the money and the profits with his own money and profits that he cannot separate and account for the profits that belong to the *cestui que trust,* the latter may have legal interest computed with annual rests. This rule is especially applicable to cases involving a willful breach of duty. 1 Perry on Trusts, § 471, and cases there cited.

We advise the Superior Court to render judgment for the plaintiff for the sum of $6,563.45, as the principal of the fund, with the interest remaining unpaid computed with annual rests.

In this opinion the other judges concurred.