PERCIVAL W. CLEMENT AND OTHERS' APPEAL FROM PROBATE.

An appeal from the allowance by a probate court of *B's* account as executor involved two questions in which he had a personal interest, one of which was decided by the appellate court in his favor and one against him, and a third question in which he had no interest.  On the settlement of his final account he charged the estate for his services and expenses in defending against the appeal.  Held that he was not entitled to an allowance of the whole amount, but that it should be apportioned between the executor and the estate with reference to the separate matters involved and the decision upon them.

The court in that case awarded costs against *B* to be paid out of the estate.  In a suit on this judgment *B* claimed a right of set-off and kept the case in court for several terms, but finally paid the demand without a trial.  Held that, to justify charging the estate the expense of defending the suit, it must be shown by the executor that it was defended in the interest and for the benefit of the estate; and that it was not enough that counsel had advised him that he had a good defence and that he had not acted in bad faith.

*B* was sued in the Superior Court as trustee and defended, among other grounds, on that of being liable, if at all, as executor, and that the probate court alone had original jurisdiction.  The court, after a long hearing and finding of facts, sustained this defence as to the greater part of the estate.  Held that *B* might properly be allowed from the estate a proportionate share of the expenses of the defence.

The testator gave a portion of his estate to *B* in trust to pay over the income, at his discretion, to the testator's son *H* for his life, for the support of his family, and on his death to pay over the same in equal portions to his children.  *H* had previously made a compromise with his creditors under which they accepted a percentage on their claims and discharged him from the balance.  *B* was a creditor and had signed the

compromise. Afterwards *H* made his note to *B* for the balance, which note the court regarded as invalid, but for which *B* took payment, with *H's* consent, out of the income which he was at his discretion to pay to *H*. Held—

1.  That *B* had no right as trustee, in the exercise of his discretion, to pay himself a debt of that character.

2.  That it did not affect the case that *H* assented to the payment, since all the income not paid over to *H* for the support of his family was to go to his children on his death, who derived title therefore from the testator and not from *H*, and were not affected by his acts.

3.  That the word "same" in the provision that the trustee should "pay over the same" to the children, included not only the body of the trust fund, but any part of the income that had not been expended in accordance with the will.

A probate court in a final settlement of an administration account may correct errors in any former and partial settlements.

And held to be no ground for not correcting such an error in a former and partial settlement, that that settlement was at the time appealed from by a party interested in other items of the account but not in the one now corrected, and that the settlement of the account, while reversed as to some other items, was affirmed as to this.

A party appealing generally from the allowance of an administration account is bound to make all objections to the account as it then stands. Failing to object to an item he waives his objection to it.

*B* paid himself from the funds in his hands as executor a debt which he claimed to be due him from the estate. This claim was afterwards disallowed on appeal. Held that while the matter was in litigation *B* was chargeable with simple interest on the amount and afterwards with compound interest.

During the period the legal rate of interest was raised from six to seven per cent. by a statute soon after repealed. Held that during the time the statute was in force *B* was chargeable with seven per cent. interest.

The trust fund in *B's* hands for the use of *H* during life was payable at his death to his children, with whatever was left of the income. Held that they were entitled to it at once and that *B* was chargeable with interest upon it from the death of *H*.

APPEAL from a decree of the probate court of the district of Hartford, allowing the administration account of Charles H. Brainard, as executor of the will of James M. Goodwin, deceased; taken to the Superior Court in Hartford County. The appellants were legatees and devisees under the will.

The testator died March 30th, 1870. The will was executed February 2d, 1870. The parts important to the present case are as follows:—

" *Fifth.*   I direct that all the rest, residue and remainder of my estate, (except the interest that I have in the real estate in West Hartford, now occupied by my son Henry W. Goodwin, including therein all such sums as my son Henry W. Goodwin shall at the time of my decease be owing me for money lent him since May 1, 1868, or paid for him on liabilities assumed by me for him since that time, or that my estate shall pay for liabilities assumed by me for him since that time,) be divided into fifty equal parts; and I give and bequeath ten of the aforesaid fifty equal parts to my beloved daughter, Mary Brainard, wife of Charles H. Brainard, and her heirs, forever.

" *Sixth.*   I give and bequeath the use, income, interest, and improvement of twenty of the above named fifty parts, to my beloved son James M. Goodwin, Jr., for and during the term of his natural life, and at his decease I direct the same to be divided equally among his children.

" *Seventh.*   I give, devise, and bequeath the remaining twenty of the aforesaid fifty parts, and all the interest and title that at my decease I shall have in the real estate in West Hartford, now occupied by my son Henry W. Goodwin, to Charles H. Brainard, in trust for the following purposes, namely—that the said trustee may, at his discretion, sell all or any part of the estate herein given him in trust, and convey the same by good and sufficient deeds or otherwise, and safely invest the avails of said sales, collect the income thereof, and pay over the use, income and rent thereof, from time to time, at his discretion, to my beloved son, Henry W. Goodwin, for and during the period of his natural life, for the comfort and support of himself and family, and at the decease of my son, Henry W. Goodwin, to pay and deliver over the same in equal portions to his children.   I direct that all such sums as at my decease I shall have lent to or paid for my son Henry W. Goodwin, in claims or liabilities assumed by me for him since May 1, 1868, and such sums as my estate shall have to pay for liabilities assumed by me since that time, shall be included in the property bequeathed to Charles H. Brainard in trust for the purpose named in this section.

"*Lastly.* I hereby make, constitute, and appoint Charles H. Brainard of Hartford, executor of this my last will and testament."

Henry W. Goodwin, named in the seventh paragraph of the will, died November 4th, 1876, and his children are a part of the appellants. James M. Goodwin, Jr., named in the sixth paragraph of the will, died October 28th, 1879, and the other appellants are his children.

A committee to whom the case was referred, made the following finding of facts :—

1. On or about the 18th day of April, 1871, the appellant, as executor of the will of James M. Goodwin, submitted to the probate court an administration account, which was settled and allowed. A second account was presented in April, 1872, which was allowed in July following. From that decree an appeal was taken to the Superior Court by James M. Goodwin, Jr. The reasons of appeal called in question the right of the executor to charge the estate with two items, one of $1,725, which he claimed was the amount of a debt due to him from the testator at the time of his death, and one of $2,715.74, which he claimed was a debt due from the estate to his wife. The case also presented the question whether cash received by the executor, amounting to over $10,000, for the sale of rights to subscribe for stock in the Ætna Fire Insurance Company after the Chicago fire in 1871, should constitute a part of the principal of the estate, or should be distributed as income. There were also questions of interest raised by the pleadings.

The executor submitted a bill of particulars of his own claim, and of that of his wife, amounting with interest to more than $24,000. The final result of the case was that the whole claim of the executor and the whole claim of his wife were disallowed. The trial of the appeal before the committee occupied ten days. The question of interest and the matter of the Ætna Insurance Company stock required less than one day. The rest of the time was taken up in the consideration of these claims. From one quarter to one third of the whole time was spent on the question whether

the claims were properly presented to the executor, and two thirds to three quarters of the time on the merits of the claims.    The claims were disallowed on the merits.

The counsel fees in the case were $668.    Mr. Brainard charged for his time and services the sum of $600.    I think the expenses of that trial should be apportioned between Mr. Brainard and the estate.    I therefore allow Mr. Brainard as a proper charge against the estate the sum of $222.67 for counsel fees, and the sum of $100 for his personal services.

2.    In J. M. Goodwin Jr.'s appeal the Superior Court directed Mr. Brainard to pay the cost taxed against him out of the estate.    The judgment for costs was assigned by James M. Goodwin, Jr., to his counsel, Goodman & Brocklesby, who brought a suit thereon in their own name.    Mr. Brainard defended that suit on the ground that he had advanced money as executor to James M. Goodwin, Jr., which he sought to set off.    There was no direct evidence that in doing so he acted in bad faith or from improper motives. On the other hand it appeared that counsel believed that he had a defence and so advised him.    The case lay in court for a long time, and finally Mr. Brainard abandoned all defence, and judgment was rendered against him without trial; which judgment was paid by him.    Under the circumstance I am inclined to allow as a proper charge against the estate, the expenses of that suit and of the injunction suit connected with it, as follows:—counsel fees, $217.71; personal services, $50.

3.    The testator died March 30th, 1870, and Mr. Brainard duly qualified and served as executor.    After the decision in J. M. Goodwin Jr.'s appeal no final action was taken in the court of probate, and the estate remained in Mr. Brainard's hands as executor.

On the 4th day of November, 1876, Henry W. Goodwin died.    His death terminated the trust under the will, and two fifths of the estate vested in the children of Henry W. Goodwin—the principal and the unappropriated balance of the income.    Mr. Brainard failed to render a final statement

of his administration and refused to pay or deliver to these children that portion of the estate belonging to them. Demand was made therefor on three several occasions after the death of Henry W. Goodwin and before the suit was brought. On the last occasion, April 4th, 1877, Mr. Brainard showed to the petitioners some general, imperfect and incorrect written statements of the amount of the principal of the estate, and the amount of unpaid income due to the petitioners, and insisted that any settlement with the petitioners should be on the showing of those statements, and refused to pay or deliver over any moneys or property except upon that showing and as a final settlement. The demand appears to have been on each occasion for the whole of the estate to which the petitioners were entitled by the terms of the will, and it does not appear that the West Hartford property hereinafter referred to, or any other particular portion of the estate, was specifically demanded.

Soon after that interview the suit of *Clement & others* v. *Brainard* was commenced. That suit was against him as trustee, and was designed to compel him to account in a court of chancery as such trustee and to recover that portion of the estate belonging to the petitioners. His main defence was, that he was not a trustee—that the property was in his hands as executor, and that the matter was within the jurisdiction of the court of probate. The defence was held good in respect to the great bulk of the property—the court holding that he was trustee only of a small part of it, the West Hartford property, valued at $617.61.

Mrs. Roxanna G. Welles, who was entitled under the will to an annuity of $400 for life, died in the year 1875. From the time of her death until April, 1877, when the suit was commenced, no reason was shown for delaying the settlement of the estate, and I find that the delay was unnecessary and unreasonable.

The defence that he held the property as executor was insisted on as applying to the West Hartford property as well as to the rest of the estate. I do not find that the defence of the suit was in the interest of the legatees or for

the benefit of the estate, unless it was so as matter of law from the fact that the suit was an attempt to close the trust and settle the estate in a court which had not jurisdiction, as it was finally decided, although the question of jurisdiction was doubtful at the commencement of the suit.

I find that Mr. Brainard paid to counsel for defending this suit the sum of $994.45, that a reasonable charge for his whole time spent on that defence will amount to $300. If these sums are to be apportioned I allow the sum of $662.96 for counsel fees and $200 for personal services.

4. At the time of the testator's death he had in the hands of Mr. Brainard the sum of $9,000 for investment, which was not on interest. That amount he retained in his hands and out of it paid debts and charges against the estate amounting to about $4,000, which were allowed on the appeal. He also paid his own claim and that of Mrs. Brainard amounting to $4,440.74, and charged the same on his administration account, which charges were disallowed on the appeal. It does not appear that the question of interest on the sum so disallowed was specifically made on that trial. It was claimed that Mr. Brainard was chargeable with interest on the whole sum of $9,000 from the death of the testator; which claim was rejected by the court.

Being of the opinion that the judgment in that case is not conclusive on the question of interest on the sum so disallowed as aforesaid, I think the executor is chargeable with simple interest on that sum from April 1st, 1871, to April 1st, 1875, and with compound interest after that date.

5. In 1861 Henry W. Goodwin became pecuniarily embarrassed and compromised with his creditors, paying them thirty-five or forty cents on the dollar, taking a discharge of the balance. Mr. Brainard was then an accommodation indorser of Goodwin's paper to the amount of $3,800, which amount he was obliged to pay. He signed the compromise papers, received his percentage, and discharged the balance.

He indorsed said notes and signed the compromise agreement at the request of the testator. Sometime afterwards Henry W. Goodwin gave his note to Mr. Brainard for the

balance of the claim discharged by the compromise agree-
ment. Mr. Brainard testified that there were other matters
included in the consideration of that note, but he did not
show what they were or how much they amounted to. I
therefore find that the consideration of the note was sub-
stantially the balance of the old claim as stated above. Mr.
Brainard signed the compromise papers on the promise of
the testator that if he would sign the discharge the balance
due him should be paid; and the note was given pursuant
to that arrangement. The testator in that matter acted in
the interest of Henry W. Goodwin as well as in his own,
but I do not find that he acted as his agent, or that Henry
W. Goodwin in any manner made such an agreement until
at or about the time he signed the note in 1867 or 1868.

On the 1st day of April, 1872, Mr. Brainard paid himself
the amount of the note, $2,375.61, from the income of the
estate, and charged the same to the account of Henry W.
Goodwin, Goodwin assenting to the charge and never com-
plaining of it afterwards.

Mr. Brainard claimed before me that the amount of that
note was virtually a claim against the estate. But I find
that it was never presented by Mr. Brainard to himself as
executor, as a claim against the estate, was not included in
any administration account presented to the court of pro-
bate, and was never charged to the estate, but was charged
in his account with H. W. Goodwin against the income
belonging to him under the will.

The income from time to time was paid over by the ex-
ecutor to Henry W. Goodwin, who disposed of it as he
pleased; and there was no evidence that his family ever
complained that it was improperly expended or that their
wants were not sufficiently provided for.

The money which the executor thus paid to himself and
applied on his personal claim against Henry W. Goodwin
was included in the settlement of April 1st, 1872; from
which settlement J. M. Goodwin, Jr., took an appeal, and
in respect to that item he made no question. If the law is
so that that settlement is conclusive against the children of

H. W. Goodwin, or if upon the facts stated the payment was well made, that item should be stricken from the account. Otherwise it should stand.

6. On the 21st day of January, 1874, Henry W. Goodwin gave his note to Caroline A. Goodwin, payable in three months at the State Bank, which was indorsed and subsequently taken up and held by Mr. Brainard. The consideration of that note was several smaller ones previously given for money expended for personal and family expenses of Mr. Goodwin after the death of the testator.

Some time previous to the death of Henry W. Goodwin it was agreed between him and Mr. Brainard that the balance of income remaining in the hands of the executor from time to time, after paying Mr. Goodwin's expenses, should be applied on that note; but no specific agreement was ever made as to the application of any special sum, or that any sum so applied should be applied as of any definite time.

During the year 1876 Mr. Brainard indorsed on the note, April 1st, $282.37, and July 1st, $246.67, and after Mr. Goodwin's death he estimated the amount of income which had accrued at the time of such death at $243.54, and indorsed that sum on the note. He informed Goodwin of the first two indorsements. At the time of Goodwin's death he was indebted in about the sum of $1,000, which indebtedness consisted partly of the expenses of his last sickness and partly of current family expenses. He left no property.

The committee appended a full statement of the account as corrected and allowed upon the evidence, which is omitted here, as the case can be sufficiently understood without it. The committee appended to the account the following statement with regard to his action as to certain matters connected with it:—

I have computed interest uniformly at six per cent. If the law is so that the executor is chargeable with interest at seven per cent. from August 22d, 1873, to April 1st, 1877, then the difference between six and seven per cent. during that time should be added to the income.

During the settlement of the estate, all the money in Mr.

Brainard's hands belonging to the estate, or to the legatees, and which was not used by him for the purposes of the estate, or paid over to the legatees at the end of each year, was paid into his own account in bank, and used by him in his own business. For the greater part of the money he gave to himself, as executor, his own notes, and paid interest thereon. The balance, including all the money the interest on which is in dispute, and on which I have allowed interest, was used by him in his business, as above stated; but he did not give any statement of the use made thereof or of the profits received therefrom.

In making the statement of money withheld from James M. Goodwin, Jr., I have excluded the sum of $500, interest withheld prior to April 1st, 1872, and distributed, and included in the settlement of that date, for the reason that Goodwin appealed from the decree allowing that account and did not object to that item. I therefore treated it as *res adjudicata.* Subsequently he did object to the application of any of the income to that claim. He acquiesced in the application of said sum of $500 that there might be a speedy settlement and distribution of the estate. If the court shall be of the opinion that, notwithstanding that settlement, the estate of James M. Goodwin, Jr., is entitled to recover that sum and interest, the amount should, and may properly, be paid from the principal before distribution.

Some question was made before me respecting the interest included in the income statement, accruing before April 1st, 1872. It was finally conceded that two items—$600 and $1,200—were not included in the settlement of April 1st, 1872, and that they were credited by Mr. Brainard afterward; so that it became simply a question of interest on those two sums to April 1st, 1872. It appeared that the money was invested by the executor, and I have accordingly charged him with interest. In the year 1870 the executor paid the sum of $1,271.98 in taxes on the list of 1869, and charged the same to the income, and it was so allowed to him in the settlement of April 1st, 1871, and remained in that condition until after the account of April 1st, 1872.

After that he was instructed by the court of probate to transfer it and make it a charge against the principal, which was done. I restored it to the income as of April 1st, 1871, and charged him with one year's interest.

The appellants remonstrated against the acceptance of the report upon grounds which sufficiently appear in the opinion of the court, and the questions of the acceptance of the report and of the decree to be passed thereon if accepted, were reserved for the advice of this court.

*C. E. Perkins,* for the appellants.

*R. D. Hubbard,* for the appellee.

CARPENTER, J.   This is an appeal from the decree of the court of probate allowing the administration account of Charles H. Brainard, executor of the will of James M. Goodwin, deceased.

The reasons of appeal call in question several items of the account in which the executor charges the estate with the expenses of litigation during the settlement, claim that the executor has not credited all the income he has received, and raise some questions relating to interest.   There are also involved in the controversy some questions relating to the application of some portions of the income to the payment of his own private claims against the beneficiaries under the will.

The case was referred to a committee, who found the facts, and the questions of law arising upon the report were reserved for the advice of this court.

We will first consider the expenses of litigation.

1.   Services and counsel fees in the appeal of James M. Goodwin, Jr.

It appears that the controversy on that appeal involved three questions—one relating to the propriety of allowing certain claims against the estate presented by the executor, and by the executor and his wife; one relating to cash received by the executor for the right to subscribe for stock

in the Ætna Fire Insurance Company, sold by him, (—whether the money so received should be treated as income or principal;) and one relating to interest.

The first was a question between the executor personally and the executor and his wife on the one hand, and the estate on the other, and was decided in favor of the estate. The third concerned the executor personally, and was decided in his favor. The second was a question in which he had no personal interest, but was really a question between those entitled to the income of a portion of the estate for life and those entitled to the property after the termination of the life estate. That was determined to be a part of the principal as claimed by the executor.

If the whole controversy had been in respect to the first alone we think it is quite clear that the executor could not properly have charged anything for his services and expenses. On the other hand, had it related to the second alone, it is equally clear that he would have been entitled to charge. Under the circumstances we think an apportionment was proper.

There is and can be in such cases no rule that will do exact justice; we can only approximate a right result. As the apportionment made by the committee does not appear to be inequitable we think the executor is entitled to charge that amount.

2. In the case referred to the Superior Court awarded costs against the executor to be paid from the estate. The judgment for costs was assigned to the counsel of the appellants. The executor refused to pay and a suit was brought. He employed counsel and kept the case in court a long time, claiming as ground of defence a right of set-off, but ultimately paid the demand without a trial. It is found that he acted under the advice of counsel, but it is not found upon what statement of facts the advice was given.

To justify charging the expense of defending that suit it should appear that it was defended in the interest and for the benefit of the estate. Confessedly there was no defence; in some other manner therefore must the executor show that

he acted in good faith. The burden is on him. The mere .fact that counsel advised him that he had a defence is not sufficient; he should go further, and disclose not only the nature but the grounds of the defence; at least enough to enable the court to see that he acted reasonably. In this he fails. It is not found expressly that. he acted in bad faith; neither is it found affirmatively that he acted in good faith; while the facts which do appear, in the absence of satisfactory explanation, tend strongly to the conclusion that he did not exercise that degree of care and prudence that men ordinarily exercise in respect to their own affairs. We advise that this item be disallowed.

3. Mrs. Wells died in 1875. After her death there was no occasion for delaying the final settlement of the estate. H. W. Goodwin died in 1876. After his death, which terminated the trust, his children demanded of the executor a settlement and payment of the amount to which they were entitled. Upon refusal a suit was brought against him as trustee under the will, seeking to compel him to account in the Superior Court. He defended, much of the account being in dispute, and also on the ground that he held the property not as trustee but as executor, and that the Superior Court had not original jurisdiction of the cause. The latter ground of defence was sustained by the court as to the greater portion of the estate. The expenses of defending that suit were apportioned by the committee; and the propriety of charging any portion of it to the estate is the question here presented.

The liability and duty of the executor to account and close the settlement of the estate must be conceded. The law furnished an appropriate tribunal to entertain jurisdiction of all matters pertaining to that account. Instead of resorting to that tribunal in the ordinary and usual course, parties interested in the estate proceeded against him in the Superior Court, claiming under the circumstances that he should be charged as trustee. What the result would have been had that claim been sustained and his account settled in that proceeding it is useless now to conjecture. Suffice

it to say that the executor had a right to insist that his account should be settled in the court of probate. He might perhaps have waived the defence and submitted to the jurisdiction of the Superior Court, in which event the result might have concluded the parties. But he could not be compelled to take the risk of the complications and difficulties that might have arisen. Therefore it was his privilege, and perhaps his duty, to defend as he did. It will hardly do to deny him this right on the ground that he had neglected his duty. For that neglect the law provided an ample remedy. If the parties interested failed to resort to that they are to some extent responsible for the delay. We advise that the sum named by the committee ($862.96,) be allowed.

We come now to some questions relating to the application of the income during the life time of Henry W. and James M. Goodwin, Jr.

1. The executor paid to himself from the income payable to Henry W. Goodwin, and by his consent, a note amounting to $2,375.61, and debited it to the income. The appellants claim that the note was void and could not have been enforced against Henry W. Goodwin. It appears that in 1861 H. W. Goodwin, being in embarrassed circumstances, compromised with his creditors, paying them thirty-five per cent., and took a discharge for the balance. The executor was a creditor and signed the composition agreement. Afterwards this note was given for the balance of that indebtedness to Mr. Brainard. Had it been given pursuant to an express or implied agreement with the debtor it would have been void. But it is claimed that Mr. Brainard signed the agreement at the request of the testator and upon a promise by him that the balance of his claim should be paid. We have no occasion now to inquire whether Mr. Brainard could have enforced that promise against the testator, as he has not attempted to do so. Practically he treated it as made for and in behalf of H. W. Goodwin and took the note of the latter in fulfillment of that promise. We must regard it therefore as a transaction with Henry

W. Goodwin, and contrary to the rule of law which forbids one creditor under similar circumstances from contracting for a private advantage not accorded to the other creditors. The note therefore was not collectible.

But it is said that Mr. Goodwin paid the note voluntarily, and that neither he during his lifetime nor his children after his death could recover it back. In *Doughty* v. *Savage*, 28 Conn., 146, there is a dictum by STORRS, C. J., that such a debt paid by the debtor could be recovered back. We neither affirm nor deny that proposition, but concede for the purposes of the case that Goodwin himself could not have recovered it back, and that his children, so far as they derive title through him, are in no better situation than he was. But that does not meet the question here, because they do not derive title from their father but from the will of the testator. The will provides that the trustee may at his discretion pay over the income to Henry W. Goodwin for the support of himself and family during his life, and at his death the trustee is directed "to pay and deliver over the same in equal portions to his children." The word "same" manifestly includes not only the body of the trust fund but also any unexpended portion of the income; so that the children as legatees have a right to question the propriety of any payment charged against the income, and that right is not affected by any act or agreement of the father disposing of the income in any manner not contemplated by the will.

But there is another objection to this charge which we ought not to pass unnoticed. The clear intention of the testator was that no portion of this income should be liable for Henry W. Goodwin's debts, with the possible exception of debts subsequently contracted for the support of the family. Hence the provision that the income was payable at the discretion of the trustee. Now when he exercises his discretion by appropriating a portion of the income to an alleged old debt due to himself, but which is in fact not a debt that he could enforce, he violates the terms and spirit of the will in the most objectionable manner. Yea more,

he violates a most salutary and wholesome rule of law, that a trustee shall derive no personal advantage from the trust fund and shall not use his position directly or indirectly to benefit himself by using the influence which that position gives him to induce the beneficiary to consent to the payment of an illegal demand.

But it is said that the children were only entitled to their support from the income, and that after supporting the family the balance, if any, belonged to H. W. Goodwin, and that he might well use it to pay debts. Neither premises nor conclusion will bear close inspection, for the children in addition to their support are entitled to the trust fund ultimately and to the residue of the income ; and the will impliedly prohibits the payment of debts except at the discretion of the trustee, and it is hardly a reasonable exercise of that discretion to pay an invalid claim to himself. If Mr. Goodwin by the consent of the trustee had paid an existing *bonâ fide* debt, that would have presented a different question.

Another question is made in this part of the case which is worthy of consideration. It seems that in April, 1872, the executor submitted an account to the court of probate, in which he debited the estate in one item with the amount paid from the income to the legatees, and that item contained the amount paid on this note. That account was allowed and James M. Goodwin took an appeal, contesting other charges but not this. Other charges were disallowed and the decree affirmed in other respects. It is now claimed that this question was conclusively settled by that proceeding.

In *Mix's Appeal from Probate*, 35 Conn., 121, it was held that a court of probate has power, in its final decree settling an administration account, to correct any errors made in any former and partial settlement of the account. That applies to errors of omission and improper charges and credits. That the account of 1872 was in fact a partial and not a final settlement is apparent. By a reference to the committee's report it will be seen that interest falling due

April 1st, 1870, and April 1st, 1871, amounting to $1,800, and not included in the account of 1872, is now charged to the executor without objection. So also the item of taxes paid in 1870 and erroneously charged to income, is now credited to income and charged to the principal by way of correction without objection. These instances serve to illustrate at once the rule, its reasonableness, and its application to the present case. .

In this case the appeal was taken by J. M. Goodwin, Jr. This item was one in which H. W. Goodwin and his children alone had an interest. H. W. Goodwin was then living, but neither he nor his children were made parties. They are therefore not to be affected by the fact that J. M. Goodwin in his appeal made no objection to the allowance of this item. He had no interest in making objection. Even if he had made objection and the court had adjudged it a proper item to be allowed, the decision would have been, as to H. W. Goodwin and his children, *res inter alios acta* and could not have concluded them. There was nothing therefore in the way of the probate court, in its final settlement of the executor's account, dealing with this item as if there had been no appeal.

2. Mr. Brainard held a note against H. W. Goodwin and wife for $1,950. The consideration of that note was several smaller ones previously given for money expended for personal and family expenses of Mr. Goodwin after the death of the testator. In 1876 Mr. Brainard applied on that note from the income of H. W. Goodwin, pursuant to an agreement with him, three payments amounting to $772.68. We are inclined to consider that sum as paid to the uses of the trust and a proper charge in the account.

3. The executor claimed that James M. Goodwin, Jr., was indebted to the estate. To the payment of that claim he applied from time to time various sums of money of the income payable to him, and charged them to his account. His administrator and heirs denied the propriety of those charges. The committee found that he was not indebted, and made a statement in one of the schedules of the amount

withheld, by the executor. That schedule contains only the items charged after April 1st, 1872. Before that date he had retained and charged as interest the sum of $500. It is now claimed that that sum with interest should be paid from the estate to the administrator before distribution.

Interest is an incident to the principal and as a rule stands or falls with it. As there was no debt there was no interest; therefore the administrator is entitled to receive that amount unless the right to it has been waived.

That sum was an item in the account of April 1st, 1872. We have already seen that that was not a final account and was not in itself conclusive. What is necessary to give it a conclusive character? It is evident that the mere right of appeal is not sufficient, for a party may well take his chances of having an erroneous charge or credit corrected in the final settlement. On the other hand, if an appeal is taken and any matter is put in issue and determined, the party has had his day in court and it would seem that it ought to be conclusive. The difficulty is in determining what rule shall apply when a party appeals and fails to put in issue a questionable matter. Shall he afterwards be heard on the final settlement?

A party may not split his cause of action so as to bring several actions. Hence if he sues for and collects a part of an account he waives the balance. We think that principle is applicable to this question. James M. Goodwin, Jr., was not bound to appeal, but as he did take an appeal he was bound to make all objections then existing to the account as it stood. Failing to object to this item he waived the objection.

In considering the last three items we have not overlooked the fact that, strictly speaking, they have no place in the administration account. The two relating to Henry W. Goodwin seem rather to be charges against him in favor of Brainard as trustee, and as such would more properly be adjusted between them after the estate is settled upon the distribution. In them the estate of J. M. Goodwin, Jr., and his children have no interest. The same is true of all pay

ments made to H. W. Goodwin in his lifetime and which are not now in dispute. On the other hand the children of H. W. Goodwin have no interest in the account between Mr. Brainard and James M. Goodwin, Jr., or his estate, except as to those items where the controversy is between Mr. Goodwin or his estate and the estate of the testator. And as to them it would have been better if a suit had been brought by the executor and the question of indebtedness had been determined before a settlement of the account. And as to the settlement itself, it would doubtless have been more orderly to have ascertained the whole income received, and after deducting the expenses to have charged the executor with the balance, leaving him to adjust his accounts with the several legatees. Had the account been settled, as it should have been, within a reasonable time, that course would have been comparatively free from difficulty. But now it is probably quite as well for all concerned that all these matters should be adjusted in this manner. The executor in every account submitted by him credited the estate with all the income received and debited it with the payments made to the several legatees; and this course was acquiesced in by all the parties. They submitted to the jurisdiction of the court, and now, after a full hearing on that basis, it is too late to raise the question.

As to interest. The appellants claim that the executor is chargeable with interest on the amount of his and his wife's claims, which were disallowed, from the death of the testator. That amount was paid from the sum of $9,000 belonging to the estate which was in the hands of the executor for investment when the testator died. The balance of the $9,000 was used to pay debts and expenses. The executor charged the amount of these claims as paid to himself April 1st, 1872. Whether they were paid then or at an earlier day does not appear. Nor does it clearly appear how soon after the death of the testator the executor commenced receiving interest. The committee charged him with interest after the expiration of one year. We cannot say that that is unreasonable.

The committee charged him with simple interest during the time that matter was in litigation, and with compound interest afterwards. That was correct. While the matter was in litigation he held the money, claiming it as his own. It is not contended that the claim, although unfounded, was made in bad faith. Pending the litigation we can hardly expect that he would treat the money as trust funds and pay over the interest annually. Nor can we properly punish him for not doing so, or legitimately inquire what profit he made by investing the money. We must apply to him the same rule that we would apply to any other person who had made an unfounded claim to a part of the trust property, and enforce the ordinary rule applicable to the collection of debts and refuse to allow compound interest.

For the same reasons simple interest was properly allowed on the claim made against Henry W. Goodwin.

From August 22d, 1873, to April 1st, 1877, the legal rate of interest was seven per cent. The executor claims that during that time he is only chargeable with six per cent. interest. That might be so on a contract made before but covering that period, or if the court was allowing interest as damages. But here the court is endeavoring to ascertain the amount of profits received by the executor for the use of the money. As he fails to account for the profits as such, the court will presume that they are equal to the interest of the money at the legal rate of interest during each year. He is therefore chargeable with interest at seven per cent. during the period referred to.

The appellants claim that the executor should be charged with the interest on the income after the death of Henry W. Goodwin from the time he received it, instead of computing it from the end of the year.

Before his death the income was payable to him at the discretion of the trustee, and in the exercise of that discretion he was bound to hold it to pay over when and as needed. Usually the whole amount or nearly the whole was paid during the year and interest was computed only on the balance at the close of the year. When Goodwin

died his children were entitled, not only to the income but to the trust fund itself, free from the trust. After that event the executor could not rightfully continue to hold it in any capacity or for any purpose. Yet he did hold it, as the account shows, paying nothing to the children. Every day's retention of the money was wrongful, and interest should be computed on it from the time he received it. The same rule should be applied to the income payable to the heirs of James M. Goodwin, Jr.

The Superior Court is advised to state the account according to these views and render judgment for the appellants.

In this opinion the other judges concurred.