STATE OF CONNECTICUT EX REL. MAX RASKIN, ADMINISTRATOR (ESTATE OF FANNIE SCHACHAT) *vs.* NATHAN SCHACHAT ET AL.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

338

Argued June 7th—decided August 3d, 1935.

*Sidney Vogel,* for the appellant-appellee (plaintiff).

*DeLancey S. Pelgrift,* with whom was *A. D. Slavitt,* for the appellants-appellees (defendants).

AVERY, J.   This action was brought against an administrator and his bondsman.   The substantial question involved is whether the court adopted the proper rule in assessing the damages.   The facts, so far as material, are as follows:   Fannie Schachat, a resident of Norwalk, died intestate June 25th, 1930, and on July 1st, 1930, her son Nathan, one of the defendants, was appointed administrator of her estate, accepted the trust and qualified by giving a probate bond in the sum of $4000 with himself as principal and the defendant The Maryland Casualty Company, of Baltimore, Maryland, as surety.   On that date, the Court of Probate limited the time for the presentation of claims against the estate to six months therefrom and allowed seven months for the settlement of the estate, and appointed appraisers and directed the administrator to deposit with it an inventory and appraisal of the estate within two months.   The estate consisted of two retail candy and stationery stores located at 18 West Washington Street and 38 Washington Street, respectively, in South Norwalk.   On the same day, upon application

of the administrator, the Court of Probate issued an order authorizing him to continue the business of the deceased so far as the same might be expedient for a prudent winding up of the same or other disposition thereof, during the period theretofore allowed by the court for the settlement of the estate, unless and until the court made further order in the premises terminating the authority therein given, or extending such period.

An inventory and appraisal was made on August 28th, 1930, but was not filed in the Court of Probate until December 1st, 1930. In the appraisal the stock and fixtures in the store at 18 West Washington Street were appraised at $2701.72 in which the item marked fixtures was placed at $1450. Under this head, the appraisers included a soda water fountain which had been purchased upon conditional sale and upon which the appraisers had erroneously estimated a balance due of $1140.95. The amount actually due at the time of the death of the deceased was $1396.75, nothing having been paid on it. The stock and fixtures at 38 Washington Street were appraised at $348.60, to which was added "cash on hand" $92.75, making a total of $441.35. The total appraisal of the two stores amounted to $3143.07, from which the amount due on the fountain of $1396.75 should be deducted, leaving the net appraisal at $1747.20. At the time of the appointment of the administrator, the estate was insolvent, which fact should have been known by him then or within a short time, and the debts of the estate were $1826.38.

Upon his appointment, the administrator placed his father in charge of the store at 38 Washington Street, paying him therefor $25 per week. This store was closed on March 31st, 1931, and consolidated with the store at 18 West Washington Street. While the store

at 38 Washington Street was open, the administrator paid his father for conducting it the total sum of $1775. The store at 18 West Washington Street was conducted by the defendant administrator who paid himself for his services therefor $15 a week until November 9th, 1931, making a total of $1065. On that date, the store was sold at public auction, at which the sum of $150 was realized. On August 8th, 1931, the Court of Probate ordered the administrator to exhibit his administration account for adjustment on August 17th, 1931. The administrator made no return of any kind to the Court of Probate with the exception of the inventory and appraisal until August 17th, 1931, when he made a return of the claims which had been presented during the time limited amounting to $1826.38, but filed no account. On April 5th, 1933, the Court of Probate issued an order directing the administrator to appear before it on April 17th, 1933, and show cause why he should not be removed. On the latter date, the court did remove him and, on April 24th, 1933, appointed Patsy J. DiPietro administrator d. b. n.

Upon his appointment, Schachat turned over to him the sum of $118.62 being the balance remaining of the proceeds of the sale less the expenses of conducting it, which is all that he had received of the assets of the estate. During the time in which Schachat conducted the business, he paid $582.95 on the purchase price of the soda fountain, but at the time of the sale of the business the fountain was not sold nor was anything received for it, it having afterward been taken in some legal proceeding against the estate. Schachat kept no books of account of the business conducted by him except two small note books, in which he entered in pencil dates and amounts of some kind, apparently representing the daily receipts from sales. The figures in these note books were neither tabulated, added or

subtracted correctly and were carelessly and inaccurately kept. The report filed with the Court of Probate was inaccurate and did not accord with the figures in the note books, nor did the amount of deposits and withdrawals in the bank agree. In the note books the total receipts appear to be $23,885.21, while the amount reported to the Court of Probate is $20,576.38. The amount of disbursements in the report is $23,-937.61, while they actually were $23,226.55, as nearly as they can be ascertained. The deposits in the bank were $29,439.40, although many of the disbursements were made in cash and not by check. Schachat borrowed money, some of which was mingled with the bank deposits, and used in paying his personal debts as well as the debts of the decedent, so that it is impossible to tell with any degree of accuracy what the condition of the estate was during his administration. In paying creditors, Schachat drew no distinction between those whose claims had accrued before the death of the deceased and those whose claims had been incurred by him in conducting the business, but paid first those who were most persistent in pressing for payment. On November 7th, 1931, the debts of the estate amounted to between $3000 and $4000. While he conducted the business, Schachat made use of the practice of "kiting" checks, thereby adding further confusion to his accounts. Owing to his method of keeping accounts, it is impossible to determine from the evidence whether he made any profits in conducting the business, whether he should have made any, and if so, what they were or should have been.

Upon these facts, the trial court concluded that Schachat had wasted the estate, that his conduct constituted a breach of the bond, that he and his surety were liable on the probate bond, and that the measure of damages was the amount coming into possession of

Schachat less what was salvaged by the sale, on which there should be compound interest from the date of the breach of the bond, namely February 1st, 1931.

In the plaintiff's appeal, the principal contention is that the court was in error in not assessing profits which the plaintiff claimed should have been made by the administrator while conducting the business. The difficulty with this contention is that neither the finding of the court as made, nor any correction thereof which the evidence permits, affords any basis upon which it can be determined that any profits were in fact made during that period or that they ought to have been made. There were figures and computations in the evidence tending to show the amount of the sales made by Schachat of various kinds of merchandise during the period while he was conducting the business. From these figures, rough estimates of the gross profit might be formed but there is no basis in the record upon which the net profits, if any, are to be computed.

Our statute, General Statutes, § 5669, provides that in actions upon a bond of this character, such damages "as are equitably due" are to be assessed. *Fowler* v. *Mallory,* 53 Conn. 420, 447, 3 Atl., 560; *Lewis* v. *Dwight,* 10 Conn. 95, 102. Where the profits earned by the improper use of trust funds are known or can be reasonably ascertained, the beneficiary of the trust has the option to claim them as such. *Ball* v. *Hopkins,* 268 Mass. 260, 269, 167 N. E. 338; 4 Bogert, Trusts & Trustees, § 863. "Since the object is to compensate the beneficiary and place him in the same situation as if the trustee had performed his duty, the measure of damages for making an unauthorized investment is the amount which would have been realized had the fund been properly invested (including the principal of the fund) less the amount received from the im-

proper investment. The court will presume that the profits equal the legal rate of interest during each year, but . . . where there has been wilful breach of duty, like an investment in trade or business for the trustee's personal benefit . . . compound interest may be allowed." 1 Cleaveland, Hewitt & Clark, Connecticut Probate Law and Practice, § 155, p. 180; *Clement* v. *Brainard,* 46 Conn. 174, 182; *Clement's Appeal,* 49 Conn. 519, 538; *State* v. *Culhane,* 78 Conn. 622, 63 Atl. 636; *Mathews* v. *Sheehan,* 76 Conn. 654, 660, 57 Atl. 694. If the trustee refuses to account for the profits arising from his use of the money or if he has so mingled the money and the profits with his own money and profits that he cannot separate and account for the profits which belong to the cestui que trust, the latter may have legal interest computed with annual rests. This rule is especially applicable where involving a wilful breach of duty. *State* v. *Howarth,* 48 Conn. 207, 217. A charge of compound interest or simple interest is authorized where the transactions are of such a nature that it is extremely difficult or impracticable to ascertain with any degree of certainty what profit was realized from the trust fund. *Title Insurance & Trust Co.* v. *Ingersoll,* 158 Cal. 474, 488, 111 Pac. 360; 4 Bogert, Trusts & Trustees, § 863.

A study of the record satisfies us that the conclusion of the trial court that it was impossible for it to determine whether Schachat made any profits in conducting the business and if he did what they were is one which it could reasonably reach. The court, then, in using interest as a measure of damages was correct. As the interest so allowed is in lieu of any gain which cannot be proved or of the losses due to the improper administration of the estate, specific instances of gain or loss due to particular acts of misconduct or instances of mingling of personal funds of Schachat with those

of the estate become of no moment when the rule is applied. Because of this and the conclusion of the trial court upon all the evidence as to the impossibility of determining whether any profits were made and if so how much they were, no purpose would be served by adding to the finding many of the facts claimed by the parties, for they could not affect the result.

The defendant, in his appeal, urges that the mistakes of the administrator were mere errors of judgment for which the surety was not liable, but the facts found by the court are not susceptible of this construction. Schachat not only continued the business after February 1st, 1931, without authority of the Court of Probate, but he mingled his own funds with those of the business, neglected to account, and so confused the funds of the estate with his own that he was unable to make any intelligible account of his doings while conducting the business. The case falls squarely within the principle laid down in *State* v. *Howarth,* supra.

The contention of the defendant that the amount to be recovered by the creditors of the estate who presented claims should be in the ratio the amount of the inventory bears to the amount of the debts allowed, overlooks the fact that the extent to which claims can be paid is dependent, not upon the inventory and appraisal, but upon the amount finally made available for that purpose through the process of administration.

From the record, it would appear that this action was brought and tried upon a misunderstanding on the part of counsel as to the nature of such a proceeding. General Statutes, § 5530, provides: "In any action upon a bond taken in a Court of Probate, the plaintiff shall aver in his complaint or reply for whose special benefit the action is prosecuted, and how such persons are interested in the same, and how the acts or neglect

of the defendant had injured their rights or affected their interests; and the judgment which shall be rendered in any such case shall not, in any further proceedings, by scire facias or otherwise, bar or conclude the rights of other persons interested in the bond." The law is settled that the amount of recovery in an action upon a probate bond goes no farther than the possible right of the person for whose special benefit the action is brought, within, of course, the extent of the liability to damages upon the undertaking of the bond. *Minor* v. *Mead,* 3 Conn. 289, 294; *Roland* v. *Isaac,* 15 Conn. 115, 122; *Taylor* v. *Mygatt,* 26 Conn. 184, 191; *Olmstead* v. *Brush,* 27 Conn. 530, 537. In such an action, the executor or administrator is not liable for any damages "except such as are shown to be equitably due to the persons for whose benefit an action may be brought." *State* v. *French,* 60 Conn. 478, 480, 23 Atl. 153. Formerly such bonds ran to the judge of probate, *Olmstead* v. *Bailey,* 35 Conn. 584, 586; and an action upon a bond was brought in the name of the judge of probate who, in case of recovery, was trustee for the parties really interested. *Blakeman* v. *Sherwood,* 32 Conn. 324, 329.

This action was brought by the plaintiff as administrator d. b. n. for the special benefit of creditors of the estate who were unpaid. The measure of damages recoverable would be the amount which the creditors have lost by reason of the maladministration of Schachat within the permissible recovery under the terms of the bond. The total amount of claims presented within the time limited for the presentation of claims was $1826.28; the judgment was for $2668.12. Obviously, the total amount of the recovery allowed exceeded the amount of the claims presented. The finding states that on November 7th, 1931, substan-

tially the time when the business was finally sold, the debts of the estate amounted to between $3000 and $4000. It has also been found that some of the creditors of the estate had been paid, and in making the payments Schachat drew no distinction between those whose claims accrued before the death of the deceased and those that had been incurred by him in conducting the business, but those had been paid first who were most persistent in pressing for payment. Ordinarily an executor or administrator has no right to carry on the business of a deceased; *Wheeler's Appeal,* 70 Conn. 511, 515, 40 Atl. 452; *Mathews* v. *Sheehan,* 76 Conn. 654, 660, 57 Atl. 694; although by statute, the Court of Probate may authorize him to do so so far as may be necessary for the preservation of the business, General Statutes, § 4960; and the testator may direct expressly or by implication an executor to continue his business so far as is necessary to preserve the assets of the estate and carry out his proper purposes. *Pitkin* v. *Pitkin,* 7 Conn. 307; *Hewitt* v. *Beattie,* 106 Conn. 602, 612, 138 Atl. 795. For an obligation incurred by an executor or administrator under such circumstances that it might not be allowed to him out of the estate, he might be held personally liable. *Hallock* v. *Smith,* 50 Conn. 127, 128. In this case, Schachat, as administrator, was authorized by the Court of Probate to continue the business for a period of six months. Whether all or any of the debts outstanding at the end of his administration were properly chargeable to the estate does not appear from the finding. See *Hewitt* v. *Beattie,* supra. There is no legal basis in the complaint or the facts found to support the judgment rendered.

There is no error in plaintiff's appeal; there is error in the defendant's appeal, the judgment is set aside

and the cause remanded for further proceedings in accordance with law.

In this opinion the other judges concurred.