JAMES TERRY vs. ROLLIN D. H. ALLEN.

New Haven & Fairfield Cos., Jan. T., 1891. ANDREWS, C. J., LOOMIS, SEYMOUR, TORRANCE and FENN, Js.

An estate in remainder in personal property, dependent on an estate for life, will, where necessary, be protected by a court of equity.

Where there is no trustee this protection is given by requiring the party having the life use to give security that the property will be forth-coming at the termination of his estate.

But this case where arising under a will is now provided for by Gen. Statutes, § 559, which provides that a court of probate may require the legatee for life to give such security, or may appoint a trustee if it is not given.

Where a testator gave personal property to a trustee to hold and manage, and pay the income to his widow during her life, and after her death to deliver it to his children, and the trustee had given a probate bond for the faithful discharge of the trust, it was held that the remainder-men had adequate security and that the fact that the trust fund was mismanaged by the trustee and in danger of suffering a loss was not a sufficient reason for the interference of a court of equity.

[Argued March 4th—decided April 20th, 1891.]

SUIT in equity by a remainder-man against the defendant Allen, as a testamentary trustee, charging him with wasting the trust fund, and praying that he be compelled to replace the funds lost or wasted and that he be ordered not to invest any part of the fund in other securities than those in which trustees are permitted by law to invest; brought to the Superior Court in New Haven County and heard before *Robinson, J.* Facts found and judgment rendered for the

plaintiff, and appeal by the defendant. The case is fully stated in the opinion.

*C. R. Ingersoll* and *W. W. Hyde* for the appellant, contended that the Superior Court had no jurisdiction to settle the accounts of the defendant as testamentary trustee, and that such jurisdiction belonged wholly to the court of probate; that the court erred in holding that trustees under the laws of this state have no right under any circumstances to invest in other securities than those specifically mentioned in the statutes referring to investments by trustees; and that the court erred in holding that the interest of the plaintiff in the trust fund as a remainder-man was sufficient to sustain the suit.

*H. Stoddard* and *J. W. Bristol*, for the appellee.

1. The Superior Court has jurisdiction of the subject matter of this action. The question is, whether, *in the absence of all notice to adverse parties in interest*, of the allowance of the trustee's accounts by the probate court, the statute of 1881 (Gen. Statutes, §§ 498, 499), has deprived the Superior Court of its former well-established equitable jurisdiction over the accounts of testamentary trustees and over the execution and administration of such trusts committed to their charge. Trusts and their administration are, in the absence of statutes to the contrary, within the exclusive jurisdiction of courts of equity. *Donalds* v. *Plumb*, 8 Conn., 446; *Cowles* v. *Whitman*, 10 id., 121; *Proprietors of White Schoolhouse* v. *Post*, 31 id., 259; *Parsons* v. *Lyman*, 32 id., 572. Extensive equitable jurisdiction is conferred upon the Superior Court by statute. Gen. Statutes, § 74; *Isham* v. *Gilbert*, 3 Conn., 166.

2. This action then is within the jurisdiction of the Superior Court, unless it is within the exclusive jurisdiction of the probate court, or unless the two courts have concurrent jurisdiction and the probate court has already become possessed of the subject matter of this controversy. Courts of probate are courts of strictly limited powers and

have no common law jurisdiction independent of statute. *Wattles* v. *Hyde*, 9 Conn., 10; *Prindle* v. *Holcomb*, 45 id., 11. Although testamentary trusts were not frequent before 1822, yet they were not unknown, and such as then existed were under the control of, and enforced by, the Superior Court as a court of equity after equity powers were conferred upon those courts. Courts of probate up to that time had no cognizance of them. *Isham* v. *Gilbert*, 3 Conn., 166; *Prindle* v. *Holcomb*, 45 id., *supra.* Between 1822 and 1853 jurisdiction over such trusts and trustees was very sparingly given to courts of probate. The only statutes passed during this period relating to testamentary trusts, empowered the courts of probate to appoint persons to execute such trusts "in cases of death or incapacity of trustee" (1822), "to remove trustees for cause" (1831), and regulating proceedings upon the resignation of trustees (1832). In 1853 an act was passed requiring trustees, conservators and guardians to render annual accounts to the court of probate, and this statute continued in force, substantially unchanged, until the act of 1881, already cited, was passed. Under this act it was held by the U. States Circuit Court for this district, in *Parsons* v. *Lyman*, 32 Conn., 566, that the settlement of accounts of testamentary trustees is a matter of equity jurisprudence, and does not properly belong to courts of probate; and that jurisdiction over such accounts is not given to them by the laws of Connecticut. This court, in *Prindle* v. *Holcomb*, *supra*, came to the same conclusion as to the construction and effect of the act of 1853. In *Clement* v. *Brainerd*, 46 Conn., 174, (decided in 1878), a bill in equity was brought to the Superior Court, for an account and payment to the petitioners of money in the respondent's hands as trustee. This court held that the bulk of the estate was in the respondent's hands as executor, and that the Superior Court had no power to order him to distribute the property, but with reference to another portion of the estate which had been given him specifically as trustee, the court entertained jurisdiction and ordered an account. On this point LOOMIS, J., delivering the opinion, says: "The West Hart-

ford real estate stands upon a different ground from the other property. That was devised to the respondent in trust for the benefit of Henry W. Goodwin, during his natural life, with power to sell the same and invest the avails, and upon the death of the said Henry, to pay and deliver the same in equal portions to his children. The respondent, in pursuance of the power so given him sold that estate, and thereby assumed all the responsiblities of a trustee under the will in respect to it. He is, therefore, liable to account for the same in this suit." In that case the distinction between the jurisdiction of the Superior Court over an executor as such, and over a testamentary trustee, is sharply drawn. In the one case jurisdiction was declined; in the other entertained. No change was made in the law after the decision of *Prindle* v. *Holcomb* and *Clement* v. *Brainerd* until the act of 1881 was passed. That act is an enabling act. It does not purport to deprive the Superior Court of its former jurisdiction over testamentary trusts or trustees, but it confers a new jurisdiction upon the probate courts over a subject matter not before within their cognizance. This is made plain by the light of the law as it previously existed, and of the mischief intended to be remedied thereby. In the language of SHIPMAN, J., in *Parsons* v. *Lyman*, " the jurisdiction over such trusts and trustees has peculiarly pertained to these courts from the earliest times, and an act withdrawing them from that jurisdiction must be plain and specific. That jurisdiction will not be ousted by mere implication." A general grant of jurisdiction to the probate courts does not confer exclusive cognizance of the subject matter of the grant, and an examination of the Connecticut cases shows this beyond the possibility of cavil or dispute. *Warner's App. from Probate*, 30 Conn., 253; *McKenzie's App. from Probate*, 41 id., 607; *Davenport* v. *Olmstead*, 43 id., 67, 76; *Jones's App. from Probate*, 48 id., 60; *Security Co.* v. *Hardenburgh*, 53 id., 169; *Lockwood's App. from Probate*, 55 id., 157; *Dickerson's App. from Probate*, id., 223; *Webb* v. *Lines*, 57 id., 154; *Buckley* v. *Leffingwell*, id., 163; *Hull* v. *Holloway*, 58 id., 210; *Lepard*

v. *Skinner*, id., 329. In all these cases a grant of power to the probate court has not deprived the Superior Court of its former jurisdiction, and there is no reason or propriety in the contention that in the present case the act of 1881 has a different effect. Even in regard to probate matters proper, such as the enforcement of the duties of executors and administrators, this court has never held that in all cases would a court of equity decline jurisdiction. On the contrary, its language has been carefully guarded in this particular. *Sheldon* v. *Sheldon*, 2 Root, 512, 514; *Strong* v. *Strong*, 8 Conn., 408; *Beach* v. *Norton*, 9 id., 182, 196. It is evidence of the correct construction of this act, that since its passage the Superior Court, in the exercise of its original jurisdiction, and this court on reservation or appeal therefrom, has in repeated instances entertained jurisdiction over trusts and testamentary trustees. *Simmons* v. *Hubbard*, 50 Conn., 574; *Andrews* v. *Rice*, 53 id., 566; *Bell* v. *Towner*, 55 id., 364; *Hull* v. *Holloway*, 58 id., 210. These cases show that, in the judgment of the court and profession, this statute did not grant exclusive jurisdiction to the probate courts over testamentary trusts, and a decision to a contrary effect would deal a fatal blow to the conclusiveness of the judgments rendered in those cases. And the probate court did not acquire jurisdiction of the subject matter of the suit by reason of the filing of annual accounts by the trustee, for it is alleged in the plaintiff's answer to the defendant's plea to the jurisdiction and admitted by the defendant's demurrer thereto, that no notice of any hearing upon the accounts was given. It is a fundamental principle of all jurisprudence, that no one is bound by the judgment of a court unless he has had notice and opportunity to be heard. *Starr* v. *Scott*, 8 Conn., 480, 484; *Parsons* v. *Lyman*, 32 id., 576; *Lawrence* v. *Security Co.*, 56 id., 423, 442.

3. The defendant on the trial of the cause claimed that the only remedy of the plaintiff was on his probate bond for the faithful performance of his duty as trustee, and that he could not in this suit be held to respond for his conduct as trustee. The court overruled this claim. Its want of merit

is apparent. This action seeks not only an account, a proper subject for the interference of a court of equity, but also for a judgment " directing that said trustee shall not here-after * * * invest * * * any part of said trust fund except in securities * * * permitted by law." A *cestui que trust* may compel a trustee by bill in equity to perform his duty, even though the damage would not be irreparable. 2 Lewin on Trusts, 853, 855 ; *Balls* v. *Strutt*, 1 Hare, 146 ; *Webb* v. *Earl of Shaftsbury*, 7 Ves., 487 ; *Reave* v. *Parkins*, 2 Jac. & W., 390 ; *Milligan* v. *Mitchell*, 1 Mylne & K., 446 ; *Attorney Gen.* v. *Mayor of Liverpool*, 1 Mees. & Cr., 210 ; *Dance* v. *Goldingham*, L. R., 8 Ch. App., 902. On the other hand, no such relief can be obtained by an action on a probate bond. In such an action damages only can be recovered for an ascertained default, and the specific relief here demanded cannot be had except by the aid of a court of equity.

4. The statutes furnish the sole rule by which the defendant trustee must be governed in his selection of investments of the trust fund. Gen. Statutes, §§ 495, 1800 ; Acts of 1889, ch. 224, 251. None of the investments condemned by the judgment of the Superior Court in this cause are within any of the classes of securities authorized. The statute is not merely permissive ; it is compulsory upon trustees if they desire to avoid personal liability. If the testator in his will had employed this precise language in reference to a trust fund created thereby, there would hardly be room for question as to its construction. But the statute is a provision incorporated by the supreme power of the state into every will creating a trust and governed by the laws of this state, unless the testator expressly provides otherwise therein. If trustees are not bound to follow the directions of the statute relative to the securities in which they may invest, what purpose does the statute serve ? It cannot be reasonably contended that a trustee is *ipso facto* absolved from liability if he invests in accordance with its provisions. He must still use, in making a selection from among the authorized securities, a sound discretion and the

prudence exercised by the average man in the conduct of his own affairs. This is the rule applied to trustees under wills containing powers of investment. *Learoyd* v. *Whiteley*, L. R., 12 App. Cases, 727 ; *Rae* v. *Meek*, L. R., 13 App. Cases, 558 ; *Harvard College* v. *Amory*, 9 Pick., 446. The same rule is laid down in 2 Swift's Digest, 117, in these words :— " The trustee is not answerable for having applied the trust property, even to what turned out a losing adventure, if done without fraud or negligence, and *if within the scope of his authority*." There is manifestly no difference whether this authority is conferred by will or by statute. Within the scope of his authority, however prescribed, he must be free from " fraud and negligence."

5. By the general rules of equity regulating the investment of trust funds and apart from the statute, the defendant trustee is clearly liable. " The general rule is," in the language of Justice GRAY of the U. S. Supreme Court (*Lamar* v. *Micou*, 112 U. S. R., 465,) " everywhere recognized, that a guardian or trustee when investing property in his hands, is bound to act honestly and faithfully, and to exercise a sound discretion, such as men of ordinary prudence and intelligence use in their own affairs." *Emery* v. *Batchelder*, 78 Maine, 233 ; *Kimball* v. *Reding*, 31 N. Hamp., 374 ; *Harvard College* v. *Amory*, 9 Pick., 446 ; *Hunt, Appellant*, 141 Mass., 515 ; *King* v. *Talbot*, 40 N. York, 76 ; 2 Swift's Digest, 117. The defendant has clearly failed to exercise the requisite degree of prudence and discretion in making these investments. The rule prohibits a trustee from speculating with a trust fund ; its preservation and safety is his first and highest duty ; so that upon the termination of the trust it may be delivered unimpaired to those entitled to it. The defendant cannot excuse himself by the plea that any of these securities were a favorite form of investment by the testator in his lifetime. The testator was at liberty to speculate with his own money, but the position of a trustee is far different. He is dealing not with his own property, but with that of others. *Adair* v. *Brimmer*, 74 N. York, 546 ; *McCullough* v. *McCullough*, 44 N. J. Eq.,

313. In the latter case the court in its opinion said in reference to this subject:—" The fact that the testator made such investments will not justify the trustees in continuing them. His position as the owner of the fund in his own right was vastly different from the position of confidence and responsibility which the trustees occupied." The defendant trustee committed a breach of trust in investing the fund beyond this jurisdiction. *Ormiston* v. *Olcott,* 84 N. York, 339, 344; *McCullough* v. *McCullough,* 44 N. J. Eq., 313. In *Rush's Estate,* 12 Penn. St., 378, GIBSON, C. J., delivering the opinion of the court, said:—"A chancellor would not authorize money to be invested in a country to which his jurisdiction would not extend." The same doctrine was held in *Stuart* v. *Stuart,* 3 Beav., 430, and in *Bethel* v. *Abraham,* L. R., 17 Eq., 24.

6. The interest of the plaintiff is sufficient for the maintenance of this action. A *cestui que trust* may compel a trustee to perform his duty even though his interest be contingent. 2 Lewin on Trusts, 853. "Any person whose rights are endangered by an improper or unauthorized investment may apply to the court for redress." 1 Perry on Trusts, § 467. See also *Dance* v. *Goldingham,* L. R. 8 Ch. App., 902; *Rae* v. *Meek,* L. R., 13 App. Cas., 558.

SEYMOUR, J. James Terry, senior, died April 19th, 1871, leaving a will, the third and fourth clauses of which read as follows:

" *Third.* I give, devise and bequeath one third of all the remainder of my personal estate to my friend, R. D. H. Allen and his successors, in trust, to hold and manage the same, and to pay over to my said wife, Valeria Terry, all the interest, rents, dividends and profits thereof, during her natural life, to her sole and separate use and upon her sole receipt, and at her death to cause the same to be divided as given in the next section of this will.

" *Fourth.* I give, devise and bequeath all the rest, residue and remainder of my estate, real and personal, of every name and nature, in equal proportions to all my children

living at my death, and to the issue of such as may then be deceased, if any, said issue taking by representation, and any child hereafter born to me to share in this devise, to them and their heirs; provided, however, that if any of my children shall die after my decease and before arriving at the age of twenty-one years without lawful issue, the share hereby given to said child or children shall be divided equally among my surviving children and their issue in the same manner as if said child or children had deceased during my life."

The will was duly probated in the court of probate for the district of Plymouth, and the testator's estate was duly settled and .distributed in that court. There was distributed to the defendant Allen, as trustee under the third section of the will, more than sixty thousand dollars in value of personal property, consisting of money, stocks, bonds, notes and securities of various kinds. Mr. Allen accepted the trust and qualified, giving bonds with surety in the amount of seventy-five thousand dollars for the faithful performance of his duties as trustee, and has continued to the present time to act as trustee, and now holds the trust fund. A surety on his bond has since the filing of the same become insolvent; otherwise, so far as appears, the bond is good and sufficient.

On the 3d of September, 1889, the plaintiff brought his complaint against Rollin D. H. Allen, Edward Clinton Terry, and Cornelia Hunter, therein alleging that he, the plaintiff, and said Edward and Cornelia, are the children of the testator James Terry and the only legatees under the fourth clause of his will. Said Edward and Cornelia were made defendants because unwilling to be plaintiffs, and subsequently the said Valeria Terry, widow of the testator, was made a party defendant.

The complaint in substance alleges that since said trust funds came into the possession and control of the trustee he has invested large amounts of the trust funds in unauthorized securities, whereby a serious loss has already occurred to the trust fund and further losses are imminent; that said

trustee has unlawfully changed investments from good and legal investments to those not warranted by law, and invested in stocks, bonds, notes and other securities not permitted by law, whereby large losses have occurred to the *corpus* of the fund; that many of said unlawful investments were made in securities bearing a large rate of interest or income, and that the *corpus* of the trust estate has been wasted and injured, to give the life tenant a large income; that many of said investments were made for the purpose of increasing the income of the life tenant at the expense of the remainder-men; that considerable sums have been paid by the trustee to the widow as income, interest or profits of the trust fund which properly belong to and are a part of the trust fund itself; that such unlawful and unauthorized investments were made by the trustee at the request and desire and with the concurrence of the life tenant and for the purpose of increasing her income, to the detriment of the plaintiff and the other legatees; and that the trustee neglects and refuses to manage the trust fund in conformity to law and equity, but persists in so managing it as to cause large losses to the trust fund itself and to give the life tenant a much larger amount of income, profit and interest from the trust fund than she is properly entitled to. Thereupon the plaintiff demands judgment—1st. That the trustee shall restore the trust fund to its original integrity and replace said wasted and lost trust fund in proper and lawful investments and securities.—2d. That the trustee shall not hereafter purchase or invest in any way any part of the trust fund except in securities in which trustees are permitted by law to invest.—3d. That the trustee be directed to withhold all earnings, interest, increment, dividends and profits arising from the trust fund and properly payable to said Valeria Terry in the future, until he has retained a sufficient amount in his hands to replace the amounts so unlawfully paid by him to her, with interest thereon.

The plaintiff subsequently filed specifications of the unauthorized and illegal investments claimed by him to have been made by the defendant trustee, so far as he was then

informed of the same, and as appeared by the books of account filed by the defendant in court.

It will be unnecessary, in view of the conclusion to which we have come, to consider several questions which were raised at the trial below and ably argued before us. The defendant in the first instance filed a plea to the jurisdiction on the ground that during all the time he had been trustee he has annually rendered his trustee account to the probate court of the district of Plymouth where the testator's estate was settled and within which he, the trustee, resides; that upon the rendition of said account, copies of which are appended to the plea, said court received and recorded the same respectively, and took such further action thereon as appears upon said copies; that by reason of the facts in said plea stated the probate court at the time the action was brought had acquired and then fully had jurisdiction of the subject matter of the complaint, with full jurisdictional power to adjust and allow the accounts of the defendant as such trustee with said estate and all parties interested therein, and to secure the due execution of all trusts and duties of the defendant in respect thereto, and that therefore the Superior Court is without jurisdiction to render the judgment demanded.

The plaintiff answered the defendant's plea to the jurisdiction. The defendant demurred to one paragraph of the answer, which demurrer was overruled, and the defendant's plea to the jurisdiction was overruled and the defendant ordered to answer over.

One paragraph of the answer filed in compliance with the last mentioned order is as follows:—" This defendant further says that said estate is now in process of settlement in the court of probate for the district of Plymouth; that he has, from time to time, submitted to said court his accounts as required by law, which accounts have been duly accepted and approved by said court; that he is under bonds in said court for the proper administration of said trust estate, which bonds are ample to protect the persons entitled to the remainder of said funds on the termination of said trust

against any loss; and that, while some of the said investments may to-day have a market value less than the price originally paid therefor, he believes they will all ultimately prove good investments."

The finding of facts states the claims made by the defendant which were overruled. Among them is the following: "That as said trustee had given a bond of sufficient amount and security to the court of probate for the faithful performance of his duties as trustee, he could not now be held to respond to a court of equity for his said conduct as trustee."

The appeal is grounded, among other reasons, upon the overruling of the plea to the jurisdiction, the taking jurisdiction of the matters set' out in the complaint, specification and answer, and in holding the interest of the plaintiff to be sufficient to enable him to maintain this action.

It will appear from the foregoing that, as already suggested, several interesting questions were presented by the pleadings. But it was claimed by the defendant that, upon the facts, the plaintiff had no such interest as would entitle him to maintain his action. As this claim strikes at the root of the matter it should be at once considered.

The interest created by the will in favor of the plaintiff is a remainder in personal property, dependent upon an estate for life. It was held in *Langworthy* v. *Chadwick*, 13 Conn., 42, that a remainder in personal chattels dependent on an estate for life may be created by grant or devise; and that the interest so created will be protected in chancery. The court says: "It was formerly held that the person entitled in remainder might call for security, from the legatee for life, that the property should be forthcoming at his decease, (citing several cases.) But this practice has been overruled; and chiefly on the ground that to decree such security would be improperly to interfere with the will of the testator. And the course now is for the remainder-man to call for the exhibition of an inventory, to be signed by the legatee for life and deposited in court. When, however, it can be shown that there is danger that the property will be either wasted,

secreted or removed, a court of chancery will interfere to protect the interest in remainder by compelling the tenant for life to give security. And such we suppose to be the well-settled practice in Westminster Hall. * * * Indeed, the same regard to the intention of the testator which forbids a court of chancery to decree that security shall be given where there is no danger, would seem to require such interference when that intention is likely to be defeated by the conduct of the devisee for life. This highly reasonable principle has been recognized in this country and was fully adopted by the court in *Hudson* v. *Wadsworth*, 8 Conn., 348. See also 2 Swift's Dig., 154; 2 Kent's Comm., 287; 2 Paige, 123."

The protection, it will be observed, which the court of chancery affords, is to require adequate security. And this is the protection which was subsequently provided by statute, through courts of probate, for persons interested in remainder, in cases where no trustee is named for such estate during the continuance of the life estate. Pub. Acts, 1865, p. 74; Gen. Statutes, § 559. In such cases this court has assumed that the protection so afforded was adequate and appropriate. *Clarke* v. *Terry*, 34 Conn., 176; *Sanford* v. *Gilman*, 44 Conn., 461; *Security Company* v. *Hardenburgh*, 53 Conn., 169.

In this case a trustee for the estate during the continuance of the life estate was provided by the testator. He accepted the trust and qualified as trustee, giving bonds in accordance with law. It is not claimed that the bond is not good and sufficient. He is required by the will not only to hold and manage the trust estate and pay over to the widow all the interest, rents, dividends and profits thereof during her natural life, but at her death to cause the same to be divided as in the will provided, and his bond, of course, is conditioned upon his discharge of all his duties as trustee. The interest in remainder is protected in the same way it would have been had the property gone into the hands of the legatee for life where no trustee is named or appointed. The remainder-men are protected and are entitled to be al-

ways protected by a good and sufficient bond against loss on account of any mismanagement of the estate. As remainder-men they are entitled to no more. They have no interest in the income. They have no present claim upon the trust fund. Should the life estate terminate to-day, a good and sufficient bond stands between them and possible loss on account of any illegal management or investment of the trust funds. Unless they are negligent in failing to see to it that a good and sufficient bond is always provided, they will have like protection whenever the life estate terminates.

Upon principle we do not see our way clear in such a case to yield to the claim of the plaintiff that he may now compel the trustee to defend his investments and his management of the fund, and call upon the courts to prescribe in advance a rule by which such investments shall be governed. The plaintiff cites upon his brief from Lewin on Trusts, instances where he states that *cestuis que trust* may interfere with the management of their trustee. The reasons why *cestuis que trust* interested in the investment and management of the fund, as the source of their income, and not in its preservation only, to be handed over to them unimpaired in amount, should have that power, are not conclusive of the case in hand. In this case the plaintiff can in no proper sense be called a *cestui que trust*. The property belongs to the remainder-men, divested of the trust, immediately upon the death of the widow. The provision in the will that the trustee shall cause the same to be divided in no practical sense alters his relations to the defendant.

We are constrained to hold, therefore, in this case, that the plaintiff has full and sufficient protection and is not entitled to the relief which he demands.

There is error in the judgment appealed from.

In this opinion the other judges concurred.