FOREST CITY BUILDING AND LOAN ASSOCIATION v. WILLIAM J. DAVIS AND MASSACHUSETTS BONDING AND INSURANCE COMPANY.

(Filed 9 June, 1926.)

1. **Principal and Surety—Surety Bonds—Defalcation of Principal—Notification—Substantial Compliance.**

　　The stipulation as to immediate notification by the indemnified of defalcation of an employee covered by the bond to a company whose business is that of a surety, are construed in case of ambiguity in its expression more strongly against the company, and compliance by the indemnified, so as to put it upon reasonable notice, is held sufficient under the facts of this case.

**2. Same—Evidence—Concealment of Defalcation—Experts—Accountants.**

Where the indemnified has substantially complied with the stipulations of the bond in notifying the surety company within the time required by specifying the default within three classifications, it is competent to show by expert accountants who have made a personal investigation that certain transactions had the effect of covering up or concealing the defalcation specified in the notification to the defendant insurer.

**3. Same—Suspicion as to Defalcation.**

The requirement in the written bond of indemnity that the insured notify the insurer company immediately upon defalcation of the principal in the bonds, is sufficiently complied with if the notification be given within the time required after the insured had been reasonably satisfied, upon investigation, of the fact, and it is not required that immediately upon a suspicion notice should have been given.

**4. Same—Instructions.**

An instruction upon competent evidence that the insured had substantially complied with the requirement to immediately notify the surety company of the defalcation of the principal upon the bond, is held to be correct under the facts of this case.

**5. Judgments—Interest—Principal and Surety—Appeal and Error—Inadvertence—Modification.**

Where under the terms of the indemnifying bond interest is not due until three months after defalcation of the principal, a judgment which allows interest from an earlier period, and is otherwise correct, will be accordingly modified and affirmed.

APPEAL by defendant, Bonding and Insurance Company, from *Walter D. Siler, Emergency Judge,* at October Special Term, 1925, of RUTHERFORD. No error.

Action to recover of defendant, William J. Davis, a sum of money alleged to have been embezzled by him, while employed as secretary and treasurer of plaintiff, and to recover of defendant, Bonding and Insurance Company, the maximum amount which it had, by its bond, agreed to pay plaintiff to reimburse it for loss sustained by said embezzlement.

Issues submitted to the jury were answered as follows:

1. Was the bond issued by defendant, Bonding Company, to the plaintiff, Building and Loan Association, as alleged in the complaint? Answer: Yes.

2. Did the defendant, Davis, embezzle the funds of the plaintiff as alleged in the complaint? Answer: Yes.

3. If so, in what amount did the defendant, Davis, embezzle the funds of the plaintiff? Answer: $3,202.

4. Did plaintiff, upon discovery of the embezzlement of its funds by defendant, Davis, give immediate notice of the same to the Bonding Company? Answer: Yes.

5. Did plaintiff comply with the conditions of the bond with respect to furnishing the itemized statement as provided for therein? Answer: Yes.

From the judgment upon this verdict, that plaintiff recover of defendant, Davis, the sum of $3,202, with interest from 1 August, 1921, and of defendant, Bonding and Insurance Company, the sum of $2,000, the maximum amount of the bond, with interest from 1 August, 1921, defendant, Bonding and Insurance Company, appealed.

*R. R. Blanton and Ryburn & Hoey for plaintiff.*
*J. F. Flowers for defendant, Bonding and Insurance Company.*

CONNOR, J. On 3 September, 1919, defendant, William J. Davis, was in the employment of plaintiff as its secretary and treasurer. On said date defendant, Bonding and Insurance Company, executed as surety, with defendant Davis as principal, a bond, by which said company, in consideration of the payment of the premium as therein recited, agreed that, subject to the conditions of the bond, it would, within three months next after proof of loss had been furnished to it, reimburse plaintiff to an amount not exceeding $2,000, for such pecuniary loss of money, securities or other personal property as plaintiff might sustain by any embezzlement of said Davis while in the performance of the duties of his said office or position, which was committed during the life of the bond, and discovered within six months after the retirement of said Davis from the service of plaintiff. Among other conditions, which it is expressly stipulated in the bond shall be conditions precedent to a recovery thereunder, it is provided that "immediately after becoming aware of any act or omission which may be made the basis of a claim hereunder," plaintiff shall notify said Bonding Company and "within three months after such discovery file with the surety at its home office an itemized statement of claim sworn to by the employer, and shall produce, for investigation by the surety at the home office of the employer, all books, vouchers, and evidence, within the control of the employer, requested by the surety." It is admitted that this bond was continued in full force and effect by the issuance of a renewal certificate, until 1 August, 1921.

Evidence offered by plaintiff tended to show that defendant, Davis, retired from its service as secretary and treasurer on 1 August, 1921; that during the latter part of July, 1921, an auditor, employed by plaintiff, made an audit of the books and records of plaintiff; that on 14 September, 1921, as a result of said audit, which, however, was not accepted by plaintiff as full and correct, plaintiff notified defendant, by letter addressed to defendant at Boston, Mass., that it appeared that said Davis was short in his accounts, as secretary and treasurer; that,

thereafter, acting under the instructions of the general agent of defend-
ant, residing at Charlotte, N. C., plaintiff had a competent and experi-
enced auditor to make a thorough and complete audit of the books and
records; that by reason of the nature of plaintiff's business, and the
condition of its books and records, as kept by defendant, Davis, consid-
erable time was necessarily consumed in making said audit; that during
this time plaintiff was in correspondence with the general agent of de-
fendant at Charlotte, N. C., in regard to the audit and its claim; that
on 12 January, 1922, the audit having been completed and accepted by
plaintiff, a statement of the shortage in the accounts of defendant Davis,
as secretary and treasurer, verified by the president and secretary-treas-
urer of plaintiff, was mailed to the general agent of defendant at Char-
lotte, N. C.; said statement shows the shortage to consist of the follow-
ing items:

> Installments received and not accounted for .......$2,664.65
> Shortage in loan account ... ......... ....... .................. 378.08
> Shortage in cash account .......... .......... ............... 200.92
>
> Total............ .......... . ................. .................$3,243.65

On 27 January, 1922, defendant acknowledged receipt of plaintiff's
letter, dated 12 January, 1922, with verified statement enclosed. In
this letter plaintiff is advised by defendant as follows:

"What we require is an itemized statement setting forth the charge
against the principal. What you have heretofore sent us is merely the
amount of the total, and does not give details."

Further correspondence between plaintiff and defendant was had.
Defendant, having failed to pay plaintiff's claim, summons in this action
was issued, after the expiration of three months, and before the expira-
tion of twelve months, as required by the terms of the bond, in order that
recovery could be had upon the bond.

There was evidence that the net shortage of defendant Davis in the
installment account, as charged to him by the auditor, was $2,676.65.
Two checks were offered in evidence, referred to in the testimony of the
witnesses as the Bradley checks, aggregating $2,732.65. Both of these
checks were payable to plaintiff; both properly indorsed were deposited
in bank by Davis to the credit of plaintiff. There was evidence that
neither of these checks was entered by Davis on the books of plaintiff.
The checks were given to Davis in payment of stock. The amount of
both checks was included in the total amount of the shortage in the
installment account, as charged by the auditor to Davis. Witnesses
were permitted to testify, over objection of defendant, that as Davis had

credited himself with the deposit of these checks, but had not charged himself, on the books of plaintiff, with the checks, the effect of the deposit of the checks to the credit of plaintiff was to cover up or reduce the shortage then existing by the amount of the checks, and that he was, therefore, not entitled to credit in the accounting, to the amount of the deposit. Defendant's objections were properly overruled. Both witnesses were expert accountants—one a certified accountant, and the other a bank officer of long experience. It was competent for them to testify as to the effect upon the accounting of these entries. *S. v. Hightower,* 187 N. C., 300. Assignments of error based upon these exceptions cannot be sustained. The testimony was properly submitted to the jury upon the third issue. Plaintiff's contention that Davis had embezzled its funds in his hands, as its secretary and treasurer, to the amount as shown by the audit, did not necessarily involve these identical checks. This is clearly shown by the testimony of the auditor as to the method by which he arrived at the amount of the shortage. He charged Davis with the sum of all items which the records showed had gone into his hands, as secretary and treasurer of plaintiff, and credited him with the sum of all items for which he had properly accounted. The difference he charged in the audit to Davis.

The evidence pertinent to the first three issues, which involved primarily the liability of defendant, Davis, was sufficient, under the full and correct instructions of the court, to which there are no exceptions, to sustain plaintiff's contention as to these issues. Defendant's contentions with respect to the fourth and fifth issues are presented by its exceptions to the refusal of the court to allow its motion for judgment as of nonsuit, to the refusal of the court to give special instructions as requested in apt time, and to certain instructions given by the court in the charge to the jury. These contentions involve the construction of the provisions of the bond, which by express stipulation are conditions precedent to a recovery against defendant by plaintiff.

Did plaintiff comply with these conditions by giving "immediate notice" of its discovery of the embezzlement by Davis, and by furnishing to defendant an "itemized, verified statement" of its claim?

In view of the contentions of defendant, upon this record, the observation of *Douglass, J.,* in *Bank v. Fidelity Co.,* 128 N. C., 366, seem pertinent. *Judge Douglass,* with his usual facility of expression, says: "The object of an indemnifying bond is to indemnify; and if it fails to do this, either directly or indirectly, it fails to accomplish its primary purpose, and becomes worse than useless. It is worthless as an actual security and misleading as a pretended one." Defendant is authorized to do business in this State; this business consists in doing something more than collecting premiums in this State. It will be

LOAN ASSOCIATION v. DAVIS.

required to give value received for its premiums. If its construction of the conditions in its bond, involved in its assignments of error upon this appeal, should be sustained by the courts, its bond was not only useless as a security, but was misleading to the many who doubtless relied upon it as a protection for their weekly savings invested in the stock of plaintiff, Building and Loan Association.

Two well-settled principles are applicable in the consideration of defendant's assignments of error:

1. "The law does not have the same solicitude for corporations engaged in giving indemnity bonds for profit as it does for the individual surety who voluntarily undertakes to answer for the obligations of another. Although calling themselves sureties, such corporations are in fact insurers, and in determining their rights and liabilities, the rules peculiar to suretyship do not apply." *Chicago Lumber Co. v. Douglass,* 89 Kan., 308, 44 L. R. A. (N. S.), 843, and cases cited. This Court has justly held that such corporations may make such reasonable regulations as are necessary for their own protection or the proper transaction of their business; but such stipulations will be most strongly construed against a forfeiture of the indemnity for which alone the bond is given, and in favor of a fair and equitable construction of the essential purpose of the contract.

2. "If, looking at all its provisions, the bond is fairly and reasonably susceptible to two constructions, one favorable to the bank, and the other favorable to the Surety Company, the former, if consistent with the objects for which the bond is given, must be adopted, and this for the reason that the instrument which the Court is invited to interpret was drawn by the attorneys, officers or agents of the Surety Company. This is a well established rule in the law of insurance." *American Surety Co. v. Pauly* (No. 1), 170 U. S., 133, 42 L. Ed., 977.

These principles have been approved and applied in many decisions of this Court, in actions involving life, fire and accident insurance policies. *Guarantee Corp. v. Electric Co.,* 179 N. C., 402; *Moore v. Accident Assurance Corporation,* 173 N. C., 532; *Lyons v. Knights of Pythias,* 172 N. C., 408; *Collins v. Casualty Co.,* 172 N. C., 543; *Penn v. Ins. Co.,* 160 N. C., 399; *Power Co. v. Casualty Co.,* 153 N. C., 275; *Bray v. Ins. Co.,* 139 N. C., 390; *Bank v. Fidelity Co.,* 128 N. C., 366. They will be applied in the construction and interpretation of bonds or contracts such as that involved in this action.

In *Fidelity and Deposit Co. v. Courtney,* 46 L. Ed., 1193, the Supreme Court of the United States approved an instruction that the requirement of a bond that the employer shall immediately give the company notice in writing of the discovery of any default or loss, ought not to receive the construction that it was intended by the parties that notice of a

default should be given instantly on the discovery of a default, but that what was meant was that notice should be given within a reasonable time, having in view all the circumstances of the case.

We find no error in the instruction of the court upon the fourth issue that the requirement in the bond in the instant case, that plaintiff "immediately after becoming aware of any act or omission which may be made the basis of a claim hereunder shall notify the surety at its home office," does not mean that as soon as plaintiff suspected or had suspicion that Davis was short in his accounts, plaintiff should notify defendant. Davis terminated his employment by plaintiff on 1 August, 1921; plaintiff notified defendant on 14 September, 1921, that it appeared that Davis was short in his accounts. The court properly submitted the fourth issue to the jury, with instructions that if they found from the evidence, and by its greater weight, that plaintiff in good faith and within a reasonable time after the discovery, notified defendant of such shortage, the notice was sufficient, and that they should answer the issue Yes; otherwise, No.

Nor do we find error in the instruction as to the fifth issue. Defendant's contention that plaintiff was required by the conditions of the bond to furnish a statement showing in detail each separate sum of money embezzled by Davis during the life of the bond, from 3 September, 1919, to 1 August, 1921, is unreasonable and cannot be sustained. The court instructed the jury that it was not necessary, under the provisions of the bond, that every specific item should appear in the statement furnished to defendant by plaintiff as proof of loss; that if the jury should find from the evidence, and by its greater weight that within three months from the date of the discovery of the facts upon which its claim was based, plaintiff furnished to defendant a verified statement sufficient to enable defendant to ascertain the nature of the different items upon which the claim was based, this was a substantial compliance with the condition of the bond, and the jury should answer the fifth issue "Yes," otherwise "No." This instruction is supported by authorities and upon the facts in this case it is sound in principle and in accord with justice. 14 R. C. L., 1337, sec. 507.

We have examined the special instructions requested by defendant, and refused by the court; assignments of error based upon exceptions to such refusal cannot be sustained. The contentions involved in these exceptions are practically the same as those hereinbefore discussed and decided against defendant.

It will be noted that the judgment is that plaintiff recover of defendant the sum of $2,000, with interest from 1 August, 1921. The sworn, itemized statement, which the jury found was a compliance with the provisions of the contract, was filed 12 January, 1922. It is evident

that under the terms of the bond, the sum of $2,000 was not due until the expiration of three months from that date; the judgment should be modified, to the end that plaintiff recover interest on the principal sum from 12 April, 1922, and not from 1 August, 1921, as the judgment, evidently due to an inadvertence, provides. As thus modified, the judgment should be affirmed. There is

No error.