THE STATE EX REL. MARY BEARDSLEY ET ALS. *v.* THE
LONDON & LANCASHIRE INDEMNITY COMPANY
OF AMERICA.

MALTBIE, C. J., HINMAN, AVERY, BROWN and JENNINGS, JS.

Argued April 7th—decided June 9th, 1938.

*Charles Welles Gross,* for the appellant (defendant).

*Lorin W. Willis,* with whom was *Frederic E. Mygatt,* for the appellees (plaintiffs).

HINMAN, J. This action was brought at the relation of appointees under a power of appointment claiming to be entitled to shares in the residue of property after the life use of the donee of the power, and alleging loss to the trust by mismanagement through improper and illegal investment by the life tenant, on whose bond as trustee the defendant is surety. The finding includes the following facts: By his will, George T. Sperry of New Milford, who died in July, 1926, gave to Sarah Tomlinson $10,000 in cash and his household goods, to Will S. Sperry his note for $5000 which the testator held, and he then gave to Sarah Tomlinson the use and income during her life of all the rest and residue of his estate. Subject to her life use, he made several personal bequests, aggregating $31,000, and gave the residue "to such persons, societies and corporations, and in such shares, interests and proportions, absolutely or in trust, as the said Sarah Tomlinson shall by her last will and testament . . . designate and appoint; and in default of such appointment either wholly or in part, then I give and devise the same or such part thereof as may not be so appointed by her, to the estate of said Sarah Tomlinson." George E. Ackley, the executor named in the will, qualified and settled the estate and filed his account, which the Court of Probate, on August 9th, 1927, allowed, found that there then remained for distribution $112,766.70 and ordered that the executor deliver to Sarah Tomlinson the $10,000 in cash and household furniture, to Sperry his note, that Sarah Tomlinson give a probate bond of $100,000 for the faithful performance as trustee of the trust created under the will, and that upon the acceptance of such

bond the executor deliver to her all of the rest and residue of the estate. Sarah Tomlinson as principal and the defendant as surety executed such a bond. It was accepted by the Court of Probate and on or about September 27th, 1927, Ackley filed a supplemental and final account showing a balance on hand of $104,-435.39. This account was approved by the Court of Probate, which found that securities of the inventory value of the amount above mentioned remained on hand and ordered that the executor deliver the same to Sarah Tomlinson under the terms of the will. Subsequently Ackley made return that he had delivered these securities to Sarah Tomlinson and taken her receipt therefor. The pecuniary legacy of $10,000 made to Sarah Tomlinson and ordered paid to her was never paid.

Sarah Tomlinson died March 9th, 1932, leaving a will and codicil by the terms of which she, in pursuance of the power and authority given her by the Sperry will, designated and appointed disposition of so much of the residuary estate of Sperry as remained, after the payment of the legacies bequeathed by the Sperry will, to named individuals and corporations to the amount of $31,000, also certain real estate, and all the rest and residue remaining after payment of these appointments and dispositions to her nephew George N. Beardsley; Marcus G. Merwin, named in that will as executor, qualified and acted as such and was also appointed and qualified as administrator d. b. n., c. t. a. of the estate of Sperry. On June 17th, 1932, Merwin as executor under the Tomlinson will filed in the Court of Probate a statement of facts regarding the trust estate, the life use of which had been left to Sarah Tomlinson under the Sperry will, and presented therein an account of the property which he found remaining in the trust, and setting forth that he

had no knowledge or information of any other property belonging thereto. Under date of July 9th, 1932, the Court of Probate accepted and allowed the same. Under date of September 16th, 1932, Merwin was ordered to reduce the estate to cash and on November 25th, 1932, as administrator c. t. a. of the estate of Sperry he filed in the Court of Probate a statement and account, further details as to which will be stated later in this opinion. On January 25th, 1933, this statement and account was accepted and instructions given to Merwin as to the disposition of the balance remaining on hand as hereinafter more fully stated. No appeal was ever taken from either of the orders dated July 9th, 1932, and January 25th, 1933. Further findings are recited later in appropriate connections.

From the facts found the trial court concluded that Sarah Tomlinson was a life tenant only of the estate bequeathed to her under the Sperry will; that the defendant surety is liable to the relators, all of whom are appointees by Sarah Tomlinson under the power of appointment; that the acceptance and approval of the statement and account filed by Merwin as executor of the Tomlinson will is no defense to this action, nor is the sale of securities found in the trust estate, the application of the proceeds, or the acceptance and approval of the account filed by Merwin as administrator c. t. a. of the Sperry estate; that no credit is to be given for the pecuniary legacy to Sarah Tomlinson for $10,000 which was not paid; that Sarah Tomlinson as life tenant and trustee was liable for the improper investment of the trust estate; and that for whatever portion of the trust estate was wasted or dissipated or improperly invested by her and for which she became liable, the defendant as her surety is also liable. It also concluded that the loss to the trust estate should be based upon the difference between

the cost of the improper investments plus securities wholly lost or misappropriated, less the salvage obtained by the sale of improper investments, such loss amounting to $61,610.40. To this interest from March 9th, 1932, was added and judgment rendered for the total amounting to $81,325.72.

The defendant advanced, first by a second defense, a demurrer to which was sustained, and in various ways on the trial, a claim that the probate proceedings relating to the "accounts" filed by Merwin, as executor of the will of Sarah Tomlinson, and as administrator c. t. a. of the estate of Sperry, being unappealed from, released and discharged the defendant from all liability as surety for Sarah Tomlinson. Decision as to the validity of this contention is decisive of many of the assignments of error. The gist of the claim is that the action of the Court of Probate, upon notice to all interested parties including the relators herein, was not only binding upon them but the effect thereof was to bar them from recovery from the defendant on account of improper investments made by its principal, or otherwise.

It is true that if the executor or administrator of a deceased testamentary trustee files a full and final account of the decedent, the allowance of it, if not appealed from, would be determinative of rights as between the trustee and his estate and the beneficiaries and other parties interested. General Statutes, §§ 4972, 4976. The decree of a Court of Probate if unreversed is conclusive as to all relevant matters embraced therein. *Delehanty* v. *Pitkin,* 76 Conn. 412, 421, 56 Atl. 881. The issues involved in the acceptance of such an account might, and perhaps ordinarily would, include those pertaining to the legality and propriety of investments made by the trustee and if illegality or impropriety be found by the Court of

Probate it should refuse to allow the account until it has been corrected "so as to show that the trustee is holding for the beneficiary all that the latter is entitled to receive, under the usual rules as to relief where the trustee has been guilty of misconduct; and for that purpose the court would have the power to apply the appropriate principles of law or equity necessary for the accomplishment of such a result. . . . The jurisdiction of Courts of Probate to pass upon the accounts of a testamentary trustee is not, however, exclusive, and courts of general jurisdiction may entertain actions against trustees for breaches of their duty, the jurisdiction of the two courts being concurrent." *Dettenborn* v. *Hartford-National Bank & Trust Co.,* 121 Conn. 388, 391, 185 Atl. 82.

The situation in the present case is not, however, the ordinary one involving only the respective responsibilities and rights as between a deceased trustee and a successor trustee or the beneficiaries. The rights to which the relators are entitled as appointees and beneficiaries were derived from the will of Sperry and they receive the property thereunder, and from his estate; the legal title to the appointed property never vested in Sarah Tomlinson, the life tenant and donee of the power. *McMurtry* v. *State,* 111 Conn. 594, 598, 151 Atl. 252; *United States* v. *Field,* 255 U. S. 257, 262, 41 Sup. Ct. 256. "The appointee really takes from the original testator, the donee of the power acting as a mere conduit of the former's bounty." *Bartlett* v. *Sears,* 81 Conn. 34, 42, 70 Atl. 33. In *Commonwealth* v. *Duffield,* 12 Pa. St. 277, 280, the donee is characterized as "employed to manage the conduit-pipe of another's munificence." This exceptional situation accounts for the somewhat unusual course pursued in the present instance. The paper filed by Merwin as executor of the Tomlinson estate merely pur-

ported to be and was a statement of all the property found by him, which had been held by Sarah Tomlinson as trustee under the Sperry will, and of the income thereon received by him since her death. It was obviously intended only to show the assets available to be turned back into the Sperry estate for distribution therefrom under the Sperry will. As the Superior Court aptly stated in ruling upon the demurrer to the second defense, it amounted to an "account of what he found in the hands of Sarah Tomlinson and the [Probate] Court simply found that what he filed was a correct statement of what he found." The effect of its acceptance by the Court of Probate extended no further than to confirm the accuracy of the statement as to the nature and extent of the property remaining in the hands of Sarah Tomlinson at her death and available for return to the Sperry estate. There is nothing in the record to suggest that the attention of the Court of Probate was called to the character of the investments or that it was in issue or considered. Thereafter Merwin as administrator c. t. a. on the Sperry estate and, it seems superfluously, as executor of the Tomlinson will, representing that the securities should be reduced to cash, obtained an order dated September 16th, 1932, for their sale.

The other document upon the acceptance of which the defendant relies as barring the relators of remedy was filed on November 25th, 1932, by Merwin as administrator c. t. a. of the Sperry estate. In it he set forth the history of the estate turned over to Sarah Tomlinson under the Sperry will and the several events and proceedings since her death, reported that he had, so far as he was able, converted all the assets constituting the trust fund into cash, had paid the necessary expenses and charges, and legacies amounting to $31,000 provided for in the Sperry will subject

to the life use of Sarah Tomlinson, all as shown by his accompanying account, and asked instructions, including as to the disposition of the remaining property in his hands. In a decree, dated January 25th, 1933, the Court of Probate accepted the account, gave the desired instructions, including direction to pay interest on the above mentioned legacies, and ordered the balance found remaining, amounting to $2,748.37, to be apportioned among the appointees named in the will of Sarah Tomlinson. It therefore then appeared that this sum was all that was available toward satisfying the total of $31,000 appointed specifically to persons and corporations, and of course leaving nothing for the residuary appointee George N. Beardsley, although the inventory value of the trust assets delivered to Sarah Tomlinson in 1927 had been $104,435.39. Here again, however, as in the probate proceedings in the Tomlinson estate, it does not appear that any issue was raised, litigated or considered as to the character of investments as affecting the amount available for distribution or otherwise. That issue was first raised in the present case and it was developed on the trial thereof, as shown by the finding, that original securities turned over to Sarah Tomlinson in 1927 of the inventory value of about $25,000, only, remained in the trust at her death, all the remaining securities found in the trust estate representing investments made by her, and of these only $7650 were found to be proper trust investments; all the others, of a total cost of $74,046.03 were held improper, speculative and unlawful investments for trust funds and the salvage from the sale thereof was only $19,036.96, leaving a net loss to the trust estate of $55,009.07.

The question not having been placed in issue before the Court of Probate or decided by it, its action in accepting the account does not operate as a bar to

this action. *Jones* v. *Downs*, 82 Conn. 33, 42, 72 Atl. 579; *Prindle* v. *Holcomb*, 45 Conn. 111, 124. Also, as we have seen, the statement filed by the Tomlinson executor was not of such nature, scope and effect that its acceptance by the Court of Probate involved consideration and approval of the investments in the securities listed as having been found in the possession of the trust estate or otherwise availed to discharge the decedent trustee or her surety from liability to these relators on account of improper investments, even though we grant the initial contention of the defendant that it is only liable to the extent that its principal would be. The right of persons for whose special benefit an action upon a probate bond is brought is one of direct recovery upon the bond, enforced independently and not through the medium of the estate or the executor or administrator. *State ex rel. Raskin* v. *Schachat*, 120 Conn. 337, 341, 180 Atl. 502; *State* v. *Smith*, 52 Conn. 557, 565. Whatever the effect, as to Merwin as administrator of the Sperry estate, of the acceptance of his account, it did not operate to bar or estop the relators from enforcement of their rights. The foregoing also disposes of the further claim of the defendant that the probate proceedings bar the relators from questioning the securities listed by the executor of the will of Sarah Tomlinson as the property found remaining in the trust estate.

The second major issue on this appeal is that primarily presented by a cross-complaint filed by the defendant upon which, as well as upon the substituted complaint, judgment was rendered for the plaintiff. The cross-complaint was based upon the proposition, set forth therein, that "in equity property appointed under a general power of appointment is deemed and treated as a part of the assets of the estate of the

donee of the power so far as necessary to pay claims against the estate [of the donee] which would otherwise go unsatisfied." It alleged that Sarah Tomlinson, the donee in the present case, in applying to the defendant to become surety for her on the trustee bond sued upon agreed, inter alia, "to indemnify and keep indemnified" the defendant "from any and all loss . . . which said company shall or may for any cause, at any time, sustain or incur, or be put to or become liable for under this bond, for or by reason or in consequence of said company having executed said bond." It also asserted that in case judgment was rendered for the plaintiff for an amount in excess of the net estate of Sarah Tomlinson, the defendant by virtue of the doctrine and the clause in the application above referred to, would have a right to recoup from the relators an amount which, added to the net estate, would be sufficient to meet the claim which the defendant would have against the estate of Sarah Tomlinson for the amount of said judgment, with costs, counsel fees and expenses, and claimed "in equity" such recoupment, and to offset against any judgment rendered for the plaintiff the amount by which it shall exceed the net amount of the Tomlinson estate. It developed on the trial and is found that the individual estate of Sarah Tomlinson was appraised at $14,905.26 and that the claims against it amounted to $11,295.13.

The doctrine relied on—that property of a third person, not owned by a testator but over which he had and has exercised a general power of appointment, is deemed in equity to be charged with the payment of the debts of the donee to the extent that his own estate is insufficient to satisfy them,—had its origin in the English Chancery courts (see *O'Grady* v. *Wilmot,* L. R. 2 A. C. [1916] 231) and while doubts have often been expressed as to the soundness of the rea-

sons underlying it and the logical difficulties involved have been noted, it has been generally adopted and applied in appropriate cases. We have recently recognized it in relation to succession taxation. *McMurtry* v. *State*, 111 Conn. 594, 600, 151 Atl. 252. See also *Shattuck* v. *Burrage*, 229 Mass. 448, 450, 118 N. E. 889; *Clapp* v. *Ingraham*, 126 Mass. 200; *Johnson* v. *Cushing*, 15 N. H. 298, 307; *United States* v. *Field*, 255 U. S. 257 (41 Sup. Ct. 256) and other illustrative cases cited therein, page 263. The doctrine is purely one of equity. "On no theory of hard fact is the property appointed the property of the donee of the power. But very early equity grafted onto these bald facts a principle of fair dealing. That principle was founded on the idea that a man ought to pay his debts if he could. Equity assumed as a matter of good conscience and sound morals that a man in debt could not honestly have meant to give property to his friends or relatives to the exclusion of his creditors, when he could give it to anybody he chose. . . . This is another of numerous illustrations of the application by courts of 'fundamental ethical rules of right and wrong' to the complicated affairs of mankind." *Shattuck* v. *Burrage* (Rugg, C. J.) supra, 451.

The open question is not as to the establishment of the doctrine or its recognition in this State but as to the scope and extent of its operation and proper application. Especially considering the doubts as to the technical soundness of the reasons on which it was originally established and that it is accepted today largely because of its long existence as a rule of property (*McMurtry* v. *State*, supra, 600), it should not be extended beyond the necessities of the underlying equitable principle, well expressed in the above quotation from *Shattuck* v. *Burrage*. Examination of the cases above cited or referred to discloses that in all

of them the creditors who have been accorded benefit of the rule have been general creditors in the ordinary sense; we have not been directed to and have not found any case in which its operation has been extended to one in the situation of this defendant or comparable thereto. The rule is, as we have seen, entirely one of equity. The equities of a general creditor or even those which might arise in favor of a gratuitous surety do not appertain to corporations engaged in the business of becoming sureties for profit. The law does not have the same solicitude for them. "Although calling themselves sureties, such corporations are in fact insurers." *Chicago Lumber Co.* v. *Douglas,* 89 Kan. 308, 320, 131 Pac. 563, 44 L. R. A. (N. S.) 843; *Forest City B. & L. Asso.* v. *Davis,* 192 N. C. 108, 113, 133 S. E. 530; *Hartford Accident & Indemnity Co.* v. *W. & J. Knox N. & T. Co.,* 150 Md. 40, 46, 132 Atl. 261. Contracts of suretyship are regarded as those of insurance where the surety engages in the business for profit and the rights and liabilities of the parties are governed by the rules applicable to contracts of insurance. Couch on Insurance, Vol. 1, p. 45, Vol. 5, p. 4325; 12 A. L. R. 382; 94 A. L. R. 876; and see *New Haven* v. *Eastern Paving Brick Co.,* 78 Conn. 689, 702, 63 Atl. 517; *Byram Lumber & Supply Co.* v. *Page,* 109 Conn. 256, 266, 146 Atl. 293. "A company organized to act as surety for hire, [is] paid to take the risk, presumably charging a premium which experience has taught is sufficient for the purpose." *Swanberg* v. *National Surety Co.,* 86 Mont. 340, 352, 283 Pac. 761.

The purpose of the statute, General Statutes, § 4895, in compliance with which the bond was given, is to secure that the life tenant shall perform his duty "to safely and properly keep [the] estate to be delivered to the person entitled to receive it on the determina-

tion of the life estate therein"; it was required and given to protect all persons interested in the remainder after the life estate against loss on account of any mismanagement by the life tenant. *Terry* v. *Allen,* 60 Conn. 530, 542, 23 Atl. 150. The persons so interested, in the present instance, included not only the legatees expressly provided for, subject to the life use, by the Sperry will, but also any persons entitled to the residue after payment of those legacies, through exercise of the power of appointment by Sarah Tomlinson whereby the relators were placed in the position of remaindermen, to whom the life tenant owed a duty to have the estate forthcoming, upon the termination of the life estate, for distribution to them as well as the legatees named in the Sperry will. *Terry* v. *Allen,* supra, 542. That this bond was intended to protect them as well as the Sperry legatees, instead of the latter alone as is one of the subsidiary claims of the defendant, is apparent not only from the scope of the statutory purpose but also from the amount of the bond, $100,000, which is approximately the value of the property delivered to Sarah Tomlinson, as life tenant and trustee, while the Sperry legacies amounted to $31,000 only. To give the effect, by application of the invoked doctrine, for which the defendant contends would defeat the manifest intent of the statute and purpose of the bond and deprive the relators of the very protection contemplated for them as the then potential and now actual appointees entitled to receive their respective shares of the estate. It would also enable the surety to escape a loss which, presumably for adequate premium charge, it had in effect insured against. The equities in favor of ordinary general creditors in which the doctrine had its origin and basis do not extend to one in the situation and relations of

this defendant. The trial court was justified in not applying the rule in the present instance.

The finding as we correct it is that one bond which cost $4625, an asset of the trust estate, was used by Sarah Tomlinson as collateral security for a personal loan, was appropriated by the lender in partial satisfaction thereof and so lost to the trust estate. It is also found that two other bonds costing $1976.33, purchased with funds of the trust estate, are wholly unaccounted for. The defendant claimed on the trial and here that it is not liable for the amount of these items ($6601.33) because it is less than the pecuniary legacy of $10,000 given by the Sperry will to Sarah Tomlinson but which, it is found, was not paid but the entire estate, after payment of other legacies and expenses, was turned over to and accepted by her as life tenant. The defendant is justly entitled to the credit so claimed. The same probate decree which prescribed the bond and its amount ordered the executor to pay the $10,000 legacy to Sarah Tomlinson and contemplated that only the residue of the estate after making that payment, as well as the others directed, should be delivered to her as constituting the life estate. Whatever might have been the effect as against Sarah Tomlinson of her acceptance of all the property as life tenant without requiring absolute payment of the pecuniary bequest, it is fair to assume that the defendant undertook its obligation as her surety in the justified expectation that the order would be complied with and the extent of its potential liability would be limited to the amount of the trust estate after payment of this legacy. The defendant may not now, as it attempted by assignment of error, enlarge the claim made on the trial, as above stated, to one for credit for the entire amount of the cash legacy, and appears to so recognize in its brief, but it is entitled to reduction

of damage to the extent of its original claim, i. e., the amount of the lost items, $6601.33.

According to the audit and oral evidence of the defendant's accountant it appears that computing at their cost the securities in the trust estate at its termination, Sarah Tomlinson was not in default as to total amount of the trust estate and the defendant claims that, therefore, the losses incurred were due to the character of her reinvestments rather than to misappropriation by her of the funds of the estate. This consideration doubtless would be material if the defendant prevailed in its claim, first above discussed, that because of the probate proceedings the Tomlinson estate was entitled to credit for all of the securities at their cost and the relators precluded from taking advantage of the illegality and impropriety of most of the reinvestments. The ruling of the trial court upon that point being sustained we do not understand that complaint is made as to the method of ascertainment of the loss and damages due to improper investments.

There is error in the amount of the judgment only; the case is remanded to the Superior Court with direction to correct the judgment by reducing the principal amount ($61,610.40) to $55,009.07 by deducting $6601.33, and adding interest thereon from March 9th, 1932.

In this opinion the other judges concurred.